LOUISE C. WRENN *Admx. vs.* CHARLES J. EHRLICH INC.
OCTOBER 4, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This action of assumpsit for goods sold and delivered was heard by a justice of the superior court sitting without a jury.   The defendant excepted on various grounds to a decision for the plaintiff for $554.18.   The only exception urged by the defendant in this court is to the amount of the damages.

88

Louise C. Wrenn is the administratrix of the estate of M. J. Wrenn, doing business as the High Point Furniture Company. The company conducts a wholesale furniture business in High Point, North Carolina; the defendant is engaged in the retail furniture business in the city of Providence. The plaintiff was general manager for the company in 1933, and as such manager was charged with the duty of passing on all sales and credits in behalf of the company.

The only point upon which there is any conflict in the testimony is the following. The defendant claims that it bought certain specific articles of furniture on June 17, 1933, at a furniture show in the city of New York. The plaintiff contends that no sale of any specific furniture was made at the manufacturer's exhibition in New York, but that the order in the instant case was given by the defendant to the plaintiff's salesman in Providence on July 7, 1933. The plaintiff's contention is supported by the testimony of the then general manager for the defendant, who is no longer in its employ. An examination of the testimony on this point leaves no doubt in our minds that the order was given to a salesman for the plaintiff in Providence, and that no specific articles of furniture were purchased by the defendant from the plaintiff at any furniture show in the city of New York.

The general unsettled condition of business in this country during the summer of 1933 is a matter of common knowledge. The plaintiff did nothing in respect to the defendant's order until after the defendant, on August 1, 1933, wired the following: "In need of merchandise on order." This wire was answered by plaintiff's letter of August 5, 1933, in which the plaintiff first explained that it could not fill the order at the prices originally quoted because of strikes and federal legislation that materially increased the cost of labor and materials, and then continues: "We are not going to ask you to pay our full prices, but shall expect you to co-operate to the extent you will pay prices printed in red on the blue price list. We do not have the goods in stock, due

to hindrances absolutely beyond our control. . . . If you wire us acceptance of these prices shown in red we shall give your order preferred attention, but it will be about one week before we can ship, barring of course other hindrances beyond our control." The amount of the order at the original prices was $315, and at the adjusted prices it was $484. On August 12, 1933, the defendant wired the plaintiff: "Increase agreed. Ship goods at once." Relying upon this wire, the plaintiff shipped the goods on August 18, 1933 and they were duly received and accepted by the defendant in Providence.

The defendant refuses to pay the adjusted price of $484, on the ground that its promise to pay the difference between the original price of $315 and this sum of $484, or $169, is without legal consideration. It strongly argues that the original order constituted a completed contract which the plaintiff was bound to perform in strict compliance with its terms. We are of the opinion that the defendant's contention is unsound. There is only one contract between the plaintiff and defendant, and that contract was completed when the defendant wired: "Increase agreed. Ship goods at once." The mere receipt of the original order by the plaintiff's salesman, on either June 7 or July 7, 1933, carried with it no implication that he had any authority to bind the plaintiff. A traveling salesman ordinarily cannot make a contract binding upon his principal, unless he is expressly authorized to do so, or is held out by his principal as having such authority.

In the absence of proof to the contrary, the traveling-salesman ordinarily has no ostensible or implied authority to make a binding contract without the approval of his principal; the extent of his authority is merely to solicit orders and transmit them to his principal for acceptance. No contract arises until acceptance of the order is sent to the buyer by the principal. 1 Williston on Sales, (2nd ed.) sec. 5 (a), and cases cited; Restatement of the Law—Agency, p. 135, sec. 53, comment (c).

In the instant case the defendant failed to present any proof that the salesman who took the original order had any authority to bind the plaintiff or that the plaintiff held the salesman out to it as having such authority or to do anything other than send in orders, which the plaintiff might accept or reject as it saw fit. Under the circumstances established by the evidence in this case, the receipt of the original order by the plaintiff's salesman from the defendant amounted to nothing more than an offer on the part of the defendant which the plaintiff did not accept. A binding contract between the parties came into existence when the defendant accepted by wire the counter-offer of the plaintiff as stated in its letter of August 5, 1933. The decision of the trial justice is fully supported by the law and the evidence.

All of the defendant's exceptions are overruled and the case is remitted to the superior court for the entry of judgment on the decision.

*Max Winograd, William J. Carlos,* for plaintiff.
*Frank H. Bellin,* for defendant.