Osias J. L'Etoile *et ux. vs.* Director of Public Works of the State of Rhode Island.

JULY 10, 1959.

Present: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

Powers, J. This is a petition under public laws 1953, chapter 3105, sec. 11, for the assessment of damages caused through the taking by eminent domain on December 20, 1956 of the petitioners' real property by the state for freeway purposes. The condemnation was effected pursuant to the provisions of said P. L. 1953, chap. 3105, and general laws 1938, chap. 75, §2, as amended. The case was heard by a superior court justice sitting with a jury and resulted in

a verdict for the petitioners in the sum of $32,000 with interest. The petitioners filed a motion for a new trial which was denied. The case is here on their bill of exceptions to such denial and to evidentiary rulings during the trial. The respondent herein will sometimes be referred to as the state.

The property in question consisted of a parcel of land with a two and one-half story apartment house thereon, situated on the southeasterly corner of Cottage and Underwood streets in the city of Pawtucket. The land on which the house and a three-car brick garage were located comprised something more than 12,000 square feet, well landscaped with substantial shrubs, trees and lawn. There were six rental units, all occupied, consisting of a three-room doctor's office and two two-room apartments on the first floor, three three-room apartments on the second floor, and four unused attics on the third floor.

The petitioner Osias J. L'Etoile testified that the total annual rents, including the garages, amounted to $4,428; that the apartments were equipped with gas stoves and refrigerators; and that the rental charges covered heating and hot water. He also testified that the expenses in connection with the maintenance and operation of the property amounted to $1,332.24 but that this did not include any managerial expenses or repairs. It appears that he personally made all repairs and carried on the management of the property. He further testified that the property was purchased in 1926 and shortly thereafter he made substantial repairs and converted it into an apartment house. He testified in detail as to the nature and extent of these improvements but was not permitted to testify as to their cost.

Charles H. Lawton, Jr., after qualifying as an expert familiar with real estate properties and their values in the city of Pawtucket, testified that the fair market value of petitioners' property at the time of the taking on Decem-

ber 20, 1956 was $50,000. He attempted to testify as to what he considered the fair rentals of petitioners' property should be, but on objection from the state was not permitted to do so. He computed the expenses in connection with operating the property as an apartment house to be $1,925 leaving a return of income to petitioners which, capitalized at 6½ per cent on the investment, placed the fair market value at $50,000.

During the examination of the witness Lawton the petitioners attempted to introduce as a full exhibit a photograph of property located diagonally across the street from their property, but on respondent's objection were not permitted to do so. It was offered for the purpose of showing the nature and type of property in the immediate neighborhood. It is undisputed that petitioners' property was in a residence B zone and that the property shown in the said photograph was not in the same zone to the knowledge of the witness.

William E. Coyle, Jr., after qualifying as an expert familiar with real estate properties and their values in the city of Pawtucket, testified that in his opinion the fair market value of petitioners' property was $25,000. He also testified that for investment purposes it would be necessary to add to the fixed expenses testified to by petitioner Osias J. L'Etoile an allowance for repairs, upkeep and management. In his opinion no prospective purchaser for investment purposes could be expected to provide these services on a personal basis without making allowance for their value, or if performed by an employee engaged for that purpose the compensation therefor would reduce the net annual income, and in either event the realistic net annual income would amount to $2,278 and not approximately $3,300 as estimated by witness Lawton. He further testified that the required rate of return would be 9 per cent rather than 6½ per cent to permit the investor to recoup his

original investment over a reasonably foreseeable period of years.

Testifying that in his opinion the property was in excellent condition and for that reason had an investment future of thirty-three years, he computed 3 per cent as necessary for recoupment, leaving a net return on the investment of 6 per cent per annum. The witness Coyle further testified that he was familiar with the sale of a piece of property on Cottage street in May 1956, which as an investment was comparable to petitioners' property in appraising the fair market value of the latter. The property in question was within 500 feet of petitioners' property and in May of the same year in which petitioners' property was condemned it sold in the open market for $24,000.

In cross-examination as to whether or not he had taken into consideration the excellent landscaping, shrubs, trees and lawn on petitioners' property, the witness Coyle testified that he had given it consideration, but that from an investor's point of view its maintenance constituted another item of expense and that investors gave weight to esthetic values only as they affected income. He added in this connection that all real estate people considered residential properties of more than four dwelling units as investment property which, in his words, "does not carry with it the normal amenities that you find in a one-family home." Queried as to the proximity of Glencairn Manufacturing Company to the property sold in May 1956, which the witness had used for purposes of comparison, Coyle stated that he did not know the exact distance but testified: "It isn't close enough to be an influence * * *."

In rebuttal the petitioners subpoenaed William J. Lynch, a prominent Pawtucket realtor. Counsel for respondent objected to any questioning of this witness and on petitioners' exception the court suggested that they make an offer of proof. Thereupon, in the absence of the jury, petitioners placed on the record an offer of proof that for thirty

years Lynch had lived just two blocks from their property; that he was an expert in real estate values and had appraised petitioners' property for the state; that he knew Glencairn Manufacturing Company was noisy and close by the so-called comparable property; and that petitioners' property was at least one fifth of a mile from said comparable property. They also offered proof of his appraisal of petitioners' property and the reasons therefor.

William J. Lynch was then sworn and in response to a question asked by petitioners' attorney stated that he did not wish to testify, having never represented petitioners and having done some work for the state, adding: "And I just don't feel that I should represent two masters." The trial justice then sustained respondent's objection on the grounds that an expert witness should not be permitted to testify as such unless so engaged, nor as a resident of petitioners' neighborhood in rebuttal of the opinion of the witness for the state that the proximity of the manufacturing concern was not an influence in establishing a fair market value of the property sold for $24,000 in May 1956. It is clear from the transcript that the court did not consider the second phase of the testimony proposed to be offered by Lynch as proper rebuttal.

The petitioner Osias J. L'Etoile then testified in rebuttal that the Glencairn Manufacturing Company was noisy, could be heard at the location of the so-called comparable property, could not be heard at petitioners' property, and that there were no other manufacturing concerns which could be heard from the location of petitioners' apartment house.

The evidence further discloses that a letter dated April 11, 1957 was received by petitioners in which the state made an offer of $28,100, in connection with the condemnation of their property. Counsel for petitioners offered to place this letter in evidence, to which offer respondent objected. The court sustained the objection on the ground

that the instant case was subject to the same rules of evidence as prevail in any other case.

The petitioners' bill of exceptions alleges eighty-nine grounds of error, one being to the denial of their motion ·for a new trial and the others relating to evidentiary rulings. These latter exceptions have been more or less grouped by petitioners into four specific contentions and we shall so consider them.

The first of these contentions is that the trial justice erred in refusing to permit petitioners' expert witness Charles H. Lawton, Jr. to give his opinion from his long experience in real estate as to the fair market value of the property. The petitioners' brief includes the first twenty-nine exceptions as relating to their first contention. These ·exceptions were taken to the refusal by the trial justice to permit Osias J. L'Etoile to testify to the original cost of the property, the sums expended in making renovations and repairs, plans for future development of the property, and offers for the purchase thereof, which he was prepared to testify were made prior to the condemnation.

The testimony which would have been adduced as to the original cost of the property and the expenses incurred prior to condemnation was properly excluded as immaterial and irrelevant as to the value of the property at the time of condemnation. It is well settled that the measure of damages in eminent domain proceedings is the fair market value of the property at the time of the taking. *Hall* v. *City of Providence,* 45 R. I. 167; *Hervey* v. *City of Providence,* 47 R. I. 378. The petitioners cite the *Hall* case to the contrary, but that case is admittedly an exception to the general rule where there is no evidence of the sale of comparable property. Such evidence is not lacking in the case at bar.

The proffered testimony of petitioner Osias J. L'Etoile that he intended to alter the premises by converting an apartment or apartments into additional doctors' offices

was likewise properly excluded. It would have been pure speculation if permitted. Estimated cost of such alterations, increased rentals resulting therefrom only presumed, together with the question of available tenants, would not have furnished the jury with factual information bearing on the question of fair market value.

The witness' testimony that at some time prior to the taking substantial offers for the purchase of his property had been made by responsible persons was likewise properly excluded. Conceding that this is the prevailing view, petitioners nevertheless cite *City of Chicago* v. *Lehmann*, 262 Ill. 468, to the contrary and urge the authority of this case on the court. Whether or not such evidence should be taken to have probative value is not before us in the instant case, since Osias J. L'Etoile's testimony regarding such offers would be only hearsay evidence at best.

The petitioners further contend that Charles H. Lawton, Jr. should have been permitted to give his opinion as to the fair market value of their property on the basis of his long experience with the value of real property in the city of Pawtucket, particularly in the area where petitioners' property was located. It is their position that once having qualified as an expert the witness was not required to lay a foundation as a basis for his opinion as an expert. This contention is without merit. To assist him in conducting an intelligent cross-examination, respondent was entitled to know the reasons or factors on which the witness relied to support his opinion. In any event Lawton did testify that in his opinion petitioners' property had a fair market value of $50,000.

The petitioners next contend that the trial justice committed reversible error in excluding as a full exhibit a picture marked "Petitioner's Exhibit 8 for Identification." The photograph offered was a picture of the general area across the park and on the other side of Broadway from the petitioners' property on the corner of Cottage and Under-

wood streets. It showed a well-kept business area with a new automobile salesroom and car lot together with other buildings. The witness was unable to testify whether the property shown in the photograph was in the same zone as that of petitioners' property. It appears from the record that the photographed property was in fact in an area zoned for business. It was for this reason that the trial justice excluded the photograph as a full exhibit.

The petitioners argue that since the court permitted respondent to introduce as full exhibits photographs of property even further removed from petitioners' property than that shown in the photograph offered by petitioners and excluded by the court, the exclusion of their proposed exhibit was prejudicial. They claim there is no justification for its exclusion because the property it depicts happens to be in a different zone. This contention is without merit. Property within a business zone commonly has greater value for that reason and the admission of the photograph for consideration by the jury would have been prejudicial to respondent. The petitioners' exceptions under their second contention are overruled.

The petitioners state their third contention to be: "The trial justice exhibited partiality and committed error in his rulings and conduct with reference to the examination and cross-examination of the witness, William E. Coyle, Jr." This contention in some particulars overlaps the arguments made by petitioners in their third and fourth contentions. It is based on certain of their exceptions numbered 43 through 78 in their bill of exceptions and relates entirely to evidentiary rulings by the trial justice. We have examined each of these exceptions and find them to be without merit. A number of them were answered, called for a conclusion, were argumentative, were irrelevant and immaterial, or constituted hearsay.

However, several of these exceptions related to the exclusion of a letter received by petitioners in which the state

offered the sum of $28,100 in compensation for the taking of their property. The trial justice excluded it in accordance with the general rule that an offer of settlement is made without prejudice. *Daniels* v. *Town of Woonsocket*, 11 R. I. 4; *Salter* v. *Rhode Island Co.*, 27 R. I. 27; *Demara* v. *Rhode Island Co.*, 42 R. I. 215. Whether or not this was error is immaterial since its exclusion was not prejudicial to petitioners.

The jury's verdict was several thousand dollars in excess of the offer, and the letter if admitted could have gone only to the weight of the testimony given by Coyle the expert witness for the state. The weight would have been slight indeed when it is remembered that the offer made in the letter must have taken into consideration such elements as time, the cost of litigation, and the amount of interest that would run from the time of taking. We are not impressed with petitioners' analogy of relatively higher income from an investment in a race track compared with that of a more desirable piece of property, in the sense that these may be contrasted with the returns from two comparable parcels of real estate.

The petitioners' fourth contention is that the trial justice erred in refusing to accept in evidence the testimony of William J. Lynch, the second appraiser for respondent. We have related the circumstances on which this contention is based and are of the opinion that the trial justice did not err in refusing to permit questioning of the witness by counsel for petitioners. This witness was called in rebuttal and any testimony that he might have given as a long-time resident of that section of Pawtucket in which petitioners' property is located could just as readily be given by the petitioner Osias J. L'Etoile, who in fact so testified when the testimony of Lynch was excluded.

A different question, however, is presented on the issue of whether or not Lynch could be required to testify as an expert when not engaged but merely subpoenaed by peti-

tioners for that purpose. The petitioners admit that as an expert any testimony given by Lynch would have been based on his examination of their property made during and pursuant to his employment as an appraiser for the state. We are of the opinion that, on petitioners' subpoena, in the circumstances of the instant case the trial justice did not err in sustaining respondent's objection to the giving of testimony by Lynch as an expert. *Pennsylvania Co. for Insurances on Lives, Etc.* v. *Philadelphia*, 262 Pa. 439; 2 A.L.R. 1573. See *Cooper* v. *Norfolk Redevelopment & Housing Authority*, 197 Va. 653, for a comprehensive discussion of the rule.

The petitioners argue that exclusive of the ruling on Lynch's status as a witness it was error for the trial justice to inquire of the witness and make his decision in the absence of the jury. This argument is clearly without merit. If the ruling of the trial justice was correct, and we are of the opinion that it was, the inquiry by the court if made in the presence of the jury might well have been prejudicial to respondent. If the ruling had been otherwise the jury would have been recalled and the questioning of the witness by counsel for petitioners would have been conducted in their presence. The inquiry was preliminary procedure and the jury was properly excluded.

In this connection and throughout every argument made by petitioners they advance the theory that in condemnation proceedings the state is under obligation to the person whose property is taken to disclose all of the information and every circumstance or factor which may have come to the attention of the state in connection with its efforts to determine the just compensation guaranteed to the property owner by the constitution. We are not in accord with petitioners' conception of the state's constitutional duty in eminent domain proceedings. The property owner is entitled to full and fair judicial proceedings conducted pur-

suant to sound legal principles and in accordance with the rules of procedure and evidence.

The petitioners' remaining exception is to the denial of their motion for a new trial. We have examined the rescript and find that the trial justice reviewed the evidence, applied the correct principles of law, and exercised his independent judgment in passing on the evidence on which the jury assessed the petitioners' damages. We are of the opinion that the jury's verdict did full justice between the parties and that the trial justice did not err in denying the motion for a new trial.

We have considered all of the petitioners' exceptions which they have briefed and argued, although we may not have specifically referred to them, and have found them to be without merit.

All of the petitioners' exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*William R. Goldberg, Ronald R. Gagnon,* for petitioners.

*Guy E. Gallone,* Special Counsel, for respondent.