NICHOLAS J. CALDARONE *et ux. vs.* STATE OF RHODE ISLAND *et al.*

APRIL 9, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

8

POWERS, J. This is a petition brought under G. L. 1956, §37-6-18, for the assessment of damages caused through the taking by eminent domain on January 19, 1962 of the petitioners' real property by the state for freeway purposes. The condemnation was effected in accordance with the provisions of chap. 6 of title 37, as amended, and §24-10-2. It was heard by a superior court justice, without the intervention of a jury, who entered decision for the petitioners in the sum of $164,500 and interest from the date of condemnation. The cause is before us on the bill of exceptions of the respondents, hereinafter called the state, to the decision and to certain evidentiary rulings.

The parties stipulated that petitioners were the owners as joint tenants of two parcels of land with the buildings and improvements thereon situated on the easterly side of Elmwood avenue, and designated as lots Nos. 114 and 124 on plat 88 in the office of the tax assessor of the city of Providence; that it is fully described in the petition; that condemnation thereof was effected on January 19, 1962; and that the only question before the superior court was the fair market value of the property on that date.

It appears from the evidence that both lots were zoned C-4 heavy commercial for the first 100 feet in depth and

M-1 general industrial to the rear or east thereof. Lot 124, referred to as the first parcel, was numbered 892 and 894 Elmwood avenue, had a 50-foot frontage, and contained a total of 9,500 square feet with a "three-decker" house and a three-car garage thereon. The second parcel, or lot 114, adjoined lot 124 to the south, was numbered 896 Elmwood avenue, had a frontage of 100 feet, and contained 22,068 square feet. It was occupied by a 5,000-square-foot, one-story, cinder block structure having a split concrete 50-foot front. It was leased to Sperry-Hutchinson (S & H green stamps) in 1957 and had been built at that time to their specifications. Some 14,000 square feet of this lot had been blacktopped as a parking area which accommodated 40 cars.

The sole issue being that of just compensation, all of the testimony, except that in part of petitioner Nicholas J. Caldarone and that of right-of-way engineer for the state, Joseph Garside, was offered by four real estate experts for petitioners and William E. Coyle, Jr., an expert called by the state. Mr. Caldarone, an acknowledged authority in his own right, first testified that in his opinion $170,000 represented the fair market value of the two parcels, but was later permitted to amend his appraisal. The value was then placed by him at $182,200. This figure represented an appraisal of $36,500 on the first parcel and $145,-700 for the other.

In reaching his opinion he used both the approach of comparable sales and market data or income. In addition, Mr. Caldarone also testified as to his purchase of the property, expenses in connection therewith and related matters which, as owner, were peculiarly within his knowledge.

Mr. Garside testified in response to a subpoena duces tecum served on behalf of petitioners. His testimony, however, was restricted to condemnation procedures adopted by the state and federal governments and was more informative than probative.

10

Sidney Goldman testified that he was in the real estate business and had leased 16,000 square feet of land on Elmwood avenue within several blocks of petitioners' property on June 1, 1960 to the G T R Company, Inc. of Ohio. The annual rental was $3,600 or 6 per cent on an agreed value of $60,000. The land was cleared by lessor Goldman and thereafter the lessee constructed its own building. The purpose of this testimony was to show that naked land on Elmwood avenue in the immediate vicinity of petitioners' property had a market value of $3.63 per square foot.

The petitioners also called Paul W. Carter and William F. Andrews, and placed in evidence the deposition of W. Henry Coleman.

Mr. Carter, testifying to wide experience in commercial and industrial property appraisals both in Connecticut and Massachusetts as well as Rhode Island, placed a total fair market value of $168,000 on the two parcels. This was divided between $32,000 on lot 124, or the first parcel, and $136,000 for the land and building leased by Sperry-Hutchinson.

Mr. Andrews, a specialist in commercial and industrial property appraisals with over forty years' experience, placed a full and fair market value of $164,500 on the two parcels. He appraised the 9,500 square feet, the three-tenement house and garages at $32,250, and lot 114, or the second parcel, at $132,250.

The petitioners read into the record the deposition of W. Henry Coleman whose expertise was also impressive. His appraisal most nearly approximated that of petitioner Caldarone. He appraised the first parcel at $31,750 and the second at $145,000.

It was during the taking of his deposition that objections by the state became the subject of two exceptions in its bill of exceptions. The deponent was asked if there were many sites in the city of Providence which contained two types of zoning. Objection was made and recorded

after which Mr. Coleman stated that there were very few. He was later asked whether in his opinion such fact made the property more valuable or less. There was objection to this question and to his answer that the property was more valuable in his opinion.

The petitioners supplemented the testimony of their experts by introducing in evidence a total of 20 exhibits, consisting of pictures, leases, deeds and other material of similar import.

In rebuttal of petitioners' evidence, the state called William E. Coyle, Jr., also an acknowledged expert of real property values, with a background of extensive research for the federal, state and municipal governments as well as for private interests. He testified that as to the first parcel, lot 124, he considered a commercial use to be the highest and best use and, on an analysis of comparable sales, deemed its fair market value on the day of condemnation to be $19,600. With regard to the second parcel, lot 114, using market data or income approach by reason of the ten-year lease with Sperry-Hutchinson and an analysis of comparable sales, he placed the fair market value at $109,000 or a total of $128,600 for the two parcels.

The superior court justice decided that petitioners had proved by a fair preponderance of the evidence that the fair market value of the two parcels on January 19, 1962 was $164,500. He gave decision in that amount with interest from said day of condemnation.

Both parties duly excepted to the decision but petitioners subsequently withdrew their exception.

The state, however, has both briefed and argued three exceptions. The first two are evidentiary in nature. During the reading of the Coleman deposition, the state pressed its objections to the questions heretofore related. It contends, in substance, that the evidence is incompetent because there was insufficient identification of the types of zoning involved and the area of comparable sites. These

exceptions are without merit. An examination of the questions asked of Mr. Coleman which led up to the questions in issue discloses that there was sufficient coverage to make the information sought to be elicited by the first question a factor which might or might not influence a potential purchaser. Objection thereto properly goes to the weight and not to its admissibility. The answer being properly in the record, the second question would naturally follow and any objection to it would also go only to the weight. These two exceptions are overruled.

Under its third and final exception the state contends that the decision is erroneous on three grounds. They are that the trial justice misconceived the statute on which the hearings before him were based; that he failed to comprehend that the damages to which petitioners were entitled were the full and fair cash values of each parcel on the day of condemnation; and that he took into consideration factors which were not in evidence.

Their first contention is based on the superior court justice's reference to chap. 12 of title 24 and several sections thereof as governing the proceedings at bar. That chapter relates to the Rhode Island turnpike and bridge authority which, although it has the power of eminent domain, was not involved in the taking of the subject property. It is clear from the decision, however, that the reference was a mere inadvertence and in nowise affected his consideration of the issue which he was called upon to resolve, namely, the damages to which petitioners were entitled. Indeed this was the sole issue and the reference by the court is, in a real sense, no part of his decision.

The second contention is that although the trial justice declared that the issue before him was what constitutes just compensation to petitioners, he never did define the term as being the fair market value at the time of condemnation. Referring to 4 Nichols, Eminent Domain (3d ed.), §12.2[1], p. 48, and the decisions of this and other

courts, the state compares the definitions of fair market value as therein stated with comments of the trial justice in the instant case taken out of context. A reading of his decision in its entirety, however, demonstrates that he was fully aware of the applicable rule and considered the evidence before him in the light thereof.

The state's last contention is directed to the comments of the trial justice relative to the changing character of the commercial and industrial life of Providence. It would serve no purpose here to quote these comments. Suffice it to observe that he was taking judicial notice of that which is common knowledge, not to supply evidence on an essential element of petitioners' case but rather to illustrate the circumstances in the light of his evaluation of the evidence adduced by the parties. See *Opinion to the Governor*, 75 R. I. 54, *Wrenn* v. *Charles J. Ehrlich, Inc.*, 59 R. I. 87, and *Drabble* v. *Zoning Board of Review*, 52 R. I. 228.

It is well settled that the findings of a trial justice, sitting without a jury, are entitled to great weight and will not be disturbed unless he has misconceived or overlooked material evidence or is clearly wrong. See *Dupraw* v. *Dupraw*, 69 R. I. 144. In the instant case the trial justice commented on the probative evidence and applied to it in the circumstances the applicable rule. On review of his conclusions and reasoning, we cannot say that he is clearly wrong. The exception to the decision is therefore overruled.

All of the respondents' exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Goldberg & Goldberg, Philip B. Goldberg, Leo M. Goldberg, Francis J. Barlow,* for petitioners.

*J. Joseph Nugent,* Attorney General, *William F. Fidalgo,* Special Counsel, for respondents.