206 A.2d 91 (1965)
Dorothy H.W. HUNT
v.
DIRECTOR OF PUBLIC WORKS for the State of Rhode Island.
Ex. No. 10689.
Supreme Court of Rhode Island.
January 4, 1965.
*92 Weller & Wilkins, S. Everett Wilkins, Jr., for petitioner.
J. Joseph Nugent, Attorney General, William F. Fidalgo, Special Counsel, for respondent.
POWERS, J.
This is a petition for the assessment of damages resulting from a taking by the state of a portion of the petitioner's property on the authority of the provisions of G.L. 1956, §§ 37-6-13 through 37-6-18, as amended, and § 24-10-2. The case was heard by a superior court justice sitting without a jury, who entered a decision for the petitioner in the amount of $115,000 together with interest from the day of the taking to the day of the decision. It is before us on the respondent's bill of exceptions to certain evidentiary rulings and to the decision.
The record establishes that on February 4, 1963, petitioner was the owner of a tract of land in the city of Providence consisting of 95,566 square feet, and on that date a portion thereof was condemned by the state for highway purposes.
The property comprised three contiguous parcels laid out and delineated as lots 290, 291 and 301 on assessor's plat 15. It had a frontage of 436 feet on Waterman street and extended back northerly some 212 feet to Medway street on which it fronted some 460 feet. There was a dwelling house located on lot 301 which was included in the taking, and another on lot 291 which was not so included. The area condemned cut through portions of lots 301 and 291 and contained 42,868 square feet.
*93 At the time of the taking, the land in question was zoned R-3, in which district residences and two-story apartment houses are permitted uses.
The parties stipulated that title to all of the relevant property was held by petitioner at the time it was condemned and that the condemnation by the state was proper within the meaning of the applicable statutes. The only question before the trial justice therefore was that of the fair market value.
G. Mason Gross testified as a qualified expert for petitioner that the demand for high-rise apartment sites on the East Side was greater than the supply and that petitioner's tract, before the taking, was the only one of its size in that area except for the Butler Hospital property. On this premise he placed a fair market value of $2 a square foot on the basis of a comparable sale of the Gordon School property in January 1962 for $2.60 a square foot, or 30 per cent in excess of the figure at which he appraised petitioner's property. It was the only sale he considered comparable in recent years.
Although the Gordon School property was located in an R-4 district where an apartment house such as he envisioned was a permitted use, and petitioner's property was not, Mr. Gross justified the comparison on the grounds that rezoning of the district in which petitioner's property was situated was a reasonable probability within the near future. He based his opinion on the nature of the uses in the immediate neighborhood of the subject property.
Specifically he stated: "Behind, and next to this property there is a car wash stand, a restaurant, second hand machinery and repairs and gasoline station one side. A short ways away was a jewelry company; across the street was a manufacturing concern of American Emery Wheel Products. A short one block away from it is the Salvation Army area, and a contracting firm; that was manufacturing. Just behind that heavy commercial, a gasoline station truck terminal; and some fish people in here."
He further testified that the property abutting lot 290 to the west was occupied by an apartment house as was a portion of the property further west which abutted the easterly line of Butler avenue at the corner of Medway street. Immediately across from lot 291 and a portion of lots 290 and 301 on Medway street and extending some 250 feet is the Bethany Nursing Home which runs back to Angell street. On the northerly side of Angell street, directly opposite the home, there are two other apartment houses. His testimony in this regard was greatly facilitated by reference to a large chart of the pertinent area prepared by him and introduced as petitioner's exhibit. This chart also shows and the witness testified that the land abutting lot 301 to the east for an area south of Waterman and running northerly beyond Medway was zoned M-1.
On the foregoing basis Mr. Gross expressed the opinion that the entire tract at the time of the taking had a fair market value of $190,000, that the value of the remaining land after condemnation was $75,000, and that the resulting damage to petitioner was $115,000.
Charles H. Carroll testified as an expert for the state that he had been engaged to appraise lots 301 and 291 as separate parcels; that he placed a fair market value on the land taken in each parcel at $1.25 per square foot based on available market data or comparable sales restricted to property zoned R-3; and that there was no reasonable probability of a zoning change in the near future. He made reference to several sales ranging from 88 cents to $1.40 per square foot. One such sale, however, was in 1953 for land abutting petitioner's property to the west and on which an apartment house is now located. It sold at that time for $1 per square foot and Medway street, he admitted, had not been paved.
He also testified that petitioner sustained no severance damage to the land not taken *94 even though the heptagonal-shaped tract remaining after the taking had a frontage on Waterman street of only 76 feet.
It was his opinion that the fair market value of the portion taken of lot 301 was $49,845 at the time of the taking, plus $2,655 for fences and hedges. He considered the fair market value of that portion of lot 291 taken by the state to be $3,750 plus $850 for a board fence and hedges. His total appraisal came to $57,100.
The trial justice reviewed the testimony in considerable detail. He stated that he was greatly impressed with the reasoning, approach and knowledge of petitioner's expert, but felt that the state's expert was less realistic and less experienced with land values on the east side of Providence than was Mr. Gross. In particular, the trial justice felt that the state expert's failure to find severance damages was unwarranted by the facts. He commented on the diminished adaptability of the remaining tract for a high-rise apartment house resulting from the taking contrasted with the advantages of the tract before condemnation, and decided that there were severance damages to which petitioner was entitled, citing Greene v. State Board of Public Roads, 50 R.I. 489.
Further, he found that there was a reasonable probability that the immediate area within which petitioner's land was located was likely to be rezoned in the near future and, on all the evidence, concluded that $2 a square foot was a conservative appraisal of the fair market value. Concluding that the tract had a fair market value of $190,000 before the taking and but $75,000 thereafter, he entered a decision assessing petitioner's damages at $115,000.
The respondent has briefed and argued five exceptions to alleged errors on evidentiary rulings made during the course of the trial. His third such exception, however, was based on the overruling of his objection to a question already answered and is totally without merit.
The first, second and fifth exceptions are based on the refusal of the trial justice to strike certain answers given by petitioner's expert that the witness, although qualifying as an expert, had failed to state which of the three recognized formulae was used by him in reaching his opinion as to fair market value, citing L'Etoile v. Director of Public Works, 89 R.I. 394, 153 A.2d 173, 77 A.L.R.2d 1174.
These contentions are without merit. In the L'Etoile case the opinion of an admitted real estate expert as to the fair market value, based solely on his long experience, was held to have been properly excluded for the reason that to have admitted it without supporting data would have denied the opposite party an opportunity to conduct an intelligent cross-examinatin. Such, however, is not the situation in the case at bar. Although respondent's first and second objections to Mr. Gross' testimony may have had merit at the time they were made, the trial justice, in ruling thereon, concluded that the answers were only preliminary to evidence that would be forthcoming and his rulings were made in the valid exercise of his discretion. See Hervey v. City of Providence, 47 R.I. 378, 133 A. 618.
When respondent moved to strike th testomony which resulted in the taking of his fifth exception, Mr. Gross had clearly set forth the factors on which he had formed his opinion. A proper foundation had been laid by that time and respondent was at no disadvantage in conducting his cross-examination.
The respondent's remaining exception to the evidentiary rulings of the trial justice questions the admissibility of petitioner's witness' opinion that there was a reasonable probalibity that the subject property would be rezoned within the near future. The question has never before been considered in this jurisdiction and petitioner commends to our attention the cases of Long Beach City High School District v. Stewart, 30 Cal.2d 763, 185 P.2d 585, 173 A.L.R. 249; City of Austin v. Cannizzo, 153 Tex. 324, *95 267 S.W.2d 808, and State Roads Comm'n v. Warriner, 211 Md. 480, 128 A.2d 248. These together with decisions in other jurisdictions as set forth in 4 Nichols, Eminent Domain (3d ed.) § 12.322 [1], p. 238, which petitioner also cites, clearly hold that such an opinion is admissible if based on evidence that the probability of rezoning is not purely speculative, or such rezoning remote.
We think these holdings are correct. Certainly a property owner who may place a given market value on his land by reason of the fact that less restrictive zoning regulations may be reasonably anticipated in the near future should not be deprived thereof by an intervening condemnation. We hold therefore that such an opinion is admissible for whatever weight it might be given by the trier of facts.
We turn now to respondent's exception to the decision. The principal thrust of his contention in this connection is to the weight given by the trial justice to the evidence bearing on the probability of a zoning change in the near future. He argues, and this contention goes to both the admissibility of Mr. Gross' opinion and the weight that the trial justice gave to it, that any question of rezoning was purely speculative.
We freely acknowledge that this contention would be less troublesome if there were some evidence in the record as to the history of the zoning of the district in which petitioner's property is located. When, for example, was the present zoning adopted? Which of the presently existing uses are nonconforming? Or, stated otherwise, to what extent and in what manner has the nature of the district changed? No such evidence is in the record, and we, as was the trial justice, are required to reach a decision on the basis of the record compiled. In the exercise of his judgment, however, the trial justice implicitly found that the testimony before him was sufficiently definite and unspeculative as to be entitled to some weight.
On careful consideration of the whole record before him we cannot say that the trial justice either misconceived or overlooked the material evidence. In such circumstances his findings will not be disturbed. Caldarone v. State, 98 R.I. 7, 199 A.2d 303. Nor did he misconceive the applicable law. Consequently his decision as to the damages petitioner sustained was not erroneous.
However, respondent urges that the trial justice erred in computing interest on $115,000 from the date of the taking, February 4, 1963, to the date of the decision, May 26, 1964. There is merit in this contention. In M.S. Alper & Son, Inc. v. Director of Public Works, 98 R.I. 154, 200 A.2d 583, and reaffirmed, 98 R.I. 159, 200 A.2d 587, we held that a property owner was entitled to receive a minimum of one half of the amount of the state's offer pursuant to the provisions of G.L. 1956, § 37-6-17, as amended, and that the amount it was thus so entitled to receive in partial payment should be deducted from the amount of the decision in computing the interest due from the date of the filing of its petition in the circumstances of that case until the date of final payment by the state. We deem it advisable to state here that just as the legislature intended such partial payment by the state to be mandatory on it, the legislature also intended that for purposes of computing interest the acceptance of such partial payment is mandatory on the property owner. Thus in the instant case the trial justice should have computed interest on $115,000 from the date of the taking to the date that the petitioner received or could have received partial payment and thereafter on the amount of the decision minus the amount of the partial payment received or entitled in fact to be received.
The respondent's exceptions to the evidentiary rulings are overruled. His exception to the decision is overruled as to the amount of damages and sustained on the question of interest. The case is remitted to the superior court with direction to enter judgment for the petitioner in accordance with this opinion.