**319 A.2d 658.**

LUCY PALAZZI *et al. vs.* STATE.

MAY 23, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

ROBERTS, C. J. This is a petition for the assessment of damages for the taking on October 10, 1969, of a tract of land owned by the petitioners and located in the town of Johnston. The land was taken pursuant to the provisions of the Green Acres Land Acquisition Act of 1964, G. L. 1956 (1968 Reenactment) §32-4-1 et seq. After a hearing by a justice of the Superior Court, judgment was entered for the petitioners in the amount of $148,088 with interest. From this judgment the state has prosecuted an appeal to this court.

The land taken lies to the north of Hartford Avenue and extends in a northerly direction for a distance of approximately 3,200 feet and comprises a total of 86.5 acres. The tract is roughly rectangular in shape and, according to the evidence, rises gently to the north and west and is rather heavily wooded. A topographical map in evidence indicates the existence of a swampy area along a portion of the western boundary of the tract. While most of the southern boundary of the tract does not abut on Hartford Avenue, a small jog, which comprises about 2.06 acres, does extend south to the northerly line of Hartford Avenue, along which it has a frontage of 507.79 feet. The court, in reaching its decision, attached considerable significance to the fact that by reason of this jog the tract, taken as a

whole, does in some small measure have a frontage along the northern line of Hartford Avenue.

Peter A. Laudati, a realtor who testified as an expert witness for petitioners, stated that at the time of the taking the entire tract was zoned for residential uses but that there was "a reasonable probability of rezoning" a portion of the tract comprising an area of 2.06 acres which fronted for a distance of 507.79 feet along the northerly side of Hartford Avenue. As we understand his testimony, his opinion as to the probability of a rezoning of that 2.06-acre portion of the tract rested, first, on the existence of two gasoline stations and a small restaurant in the vicinity and, second, on the fact that there had been a considerable commercial development along Hartford Avenue to the east of the tract taken. He then went on to testify as to his conclusion that at the time of the taking the 2.06 acres fronting along Hartford Avenue had a value of $31,500.

Mr. Laudati testified further that the existence of the frontage on Hartford Avenue would have a beneficial effect on the entire tract. He testified, in part: "The entire tract benefits from the influence of the frontage on Hartford Avenue. The large development which would find Hartford Avenue frontage important could be considered for the entire tract. So that just as in any tract of acreage, all of the acreage is either beneficially or adversely influenced by frontage, either the lack of it or the fact that it is there."

It is our opinion that the thrust of the expert's testimony is twofold. First, he stresses his opinion that the 86.5-acre tract has a relatively small frontage on Hartford Avenue which enhances the value of the back land by providing it access to the public way. Second, he further stresses that the value of the tract is substantially enhanced by the probability or possibility of a rezoning of

the entire tract. In addition to testifying as to the probability of a rezoning of the 2.06 acres fronting on Hartford Avenue, he also testified that the back land would probably be rezoned for commercial uses. He enlarged this testimony by stating: "But the portion taken is mostly wooded and generally would be very adaptable to residential development or a combination of residential in the interior and commercial along the Hartford Avenue frontage, *or perhaps even the possibility of a large commercial development which, although it would be contrary to the zoning at the present time, for the type of development in the neighborhood there is a reasonable probability that even this type of development could be possible.*" (Emphasis added.) In short, the expert testified on the one hand that the fact that the land had frontage on Hartford Avenue, standing alone, enhanced the value of the back land in some measure. On the other hand, he testified further that rezoning of the 2.06 acres fronting on Hartford Avenue was reasonably probable and would increase the value of that parcel to $31,500. He did testify that the possibility of rezoning the back land in the future would enhance in some measure the value of that acreage, but conceded that such rezoning was only a possibility. He then proceeded to combine the value he had placed upon the 2.06 acres fronting on Hartford Avenue with the value that he had placed upon the back acreage and testified that at the time of the taking the fair market value of the entire tract was $173,000.[1]

---

[1]Joseph W. Riker, Jr., whose qualifications as an expert were conceded, testified in behalf of the state. He was of the opinion, he stated, that there was no reasonable probability that the 2.06 acres abutting on Hartford Avenue would be rezoned for commercial uses in the near future. In support of this conclusion, he testified that there were within the town of Johnston a number of large tracts of partially developed land which were available for either residential or commercial uses. The availability of such land, he stated, was almost certain to delay the development of

. . Because of the posture in which the decision of the trial justice is presented to us for review, we need not be concerned with the testimony of Mr. Laudati that the value of the entire tract taken was enhanced because of the frontage thereof on Hartford Avenue. We are confronted here only with the state's contention that the evidence adduced through Mr. Laudati is so lacking in probative force as to be insufficient to support a conclusion that it is reasonably probable that the land will be rezoned in the near future. The challenge of the state goes not only to the sufficiency of the evidence to support a finding that the 2.06 acres fronting on Hartford Avenue will probably be rezoned, but also to the sufficiency of the evidence to support a conclusion that the back acreage will possibly be rezoned because it has access to Hartford Avenue.

The issue raised by the state has been considered by this court in *Hunt* v. *Director of Public Works*, 99 R. I. 111, 206 A.2d 91 (1965). In *Hunt* we held that opinion evidence adduced through a qualified expert that there is a reasonable probability that a particular tract of land to be taken by condemnation would be rezoned is relevant and material on the issue of the fair market value thereof at the time of the taking. The rule, however, is applicable, as we said in *Hunt*, only where the evidence discloses that the probability of such rezoning is neither remote nor speculative.

The constitutional provision for just compensation requires a determination of the fair market value of land at the time of the taking, *Assembly of God Church* v. *Vallone*, 89 R. I. 1, 150 A.2d 11 (1959), and generally that

the tract here under consideration for a period of 20 to 30 years. As a consequence of this, he testified, any possibility of rezoning the back land for commercial uses was clearly remote, and on the basis of his opinions he testified that at the time of the taking the fair market value of the land was $175 an acre or, in round figures, about $15,000 for the entire tract.

is to be determined with reference only to those uses to which the land taken could be put. *Long Beach City High School District* v. *Stewart,* 30 Cal.2d 763, 185 P.2d 585 (1947). Thus, zoning restrictions on the use of land which arise out of a zoning ordinance generally are admissible in order to assist the court in making a determination of fair market value. However, mere testimonial conjecture that, in the future, use restrictions may be lessened by rezoning is inadmissible on the question of fair market value. *See, e.g., Long Beach City High School District* v. *Stewart, supra; 0.040 Acres of Land* v. *State,* 57 Del. 173, 198 A.2d 7 (1964); *see also* 4 Nichols, *Eminent Domain* §12.322 (rev. 3d ed. 1971); Limerick, *The Effect of Zoning on Valuation in Eminent Domain,* 53 Ill. B.J. 956 (1965); Annot., 9 A.L.R.3d 291 (1966). Fundamentally, the fair market value of land at the time of the taking must be established on the basis of the effect thereon of restrictions imposed on the use thereof. We have held, in accordance with the general viewpoint, that opinion evidence as to the fair market value must rest upon sales of other properties which are subject to the same zoning restrictions. *See L'Etoile* v. *Director of Public Works,* 89 R. I. 394, 153 A.2d 173 (1959).

However, we recognized, as have many other jurisdictions, the severity of the rule and in *Hunt* adopted an exception to it. Pursuant thereto we have allowed opinion evidence to be adduced as to the market value based on a use of the land presently proscribed where it is made to appear that there is a reasonable probability that the proscribed use will be made available to the land through rezoning in the near future. *See Long Beach City High School District* v. *Stewart, supra;* and cases collected in 4 Nichols, *Eminent Domain* §12.322 [1] (rev. 3d ed. 1971); Limerick, *supra;* and Annot., 9 A.L.R.3d 291 (1966). Whatever might have been the rationale underlying the

adoption of such a rule in other jurisdictions, this court clearly intended to give such an owner the benefit of the enhanced value where the evidence adduced to support the opinion of an expert as to the probability of such a zoning change is reasonably definite and is neither speculative nor remote.

The philosophy underlying *Hunt* was that "* * * a property owner who may place a given market value on his land by reason of the fact that less restrictive zoning regulations may be reasonably anticipated in the near future *should not be deprived thereof* by an intervening condemnation." (Emphasis added.) *Hunt* contemplated a situation in which the fair market value of land had been enhanced by reason of its potential entitlement to a lessening of the use restrictions thereon when such restrictions are inconsistent with use regulations adopted under the requirement of a comprehensive plan set out in the enabling act. Because we recognized that it would be inequitable to deprive the owner of such land of the enhanced market value thereof by reason of an intervening condemnation, the thrust of *Hunt* was to make certain that such an owner will not be deprived of the benefits inhering in such enhanced market value when there is evidence adduced that is susceptible of a reasonable inference that, but for the taking, the land could have been rezoned in the near future. In effect, this court assumes under *Hunt* that the fair market value of the land had been enhanced at the time of the taking because of its potential entitlement to a lessening of the use restrictions thereon by way of a zoning change. Such an assumption, however, is made only where there is competent and relevant evidence tending to prove the probability that, but for the taking, the land would have been rezoned in the near future.

What, then, is the nature of the evidence that must be adduced to successfully invoke the exception set out in

*Hunt*? The rule as stated therein requires that the evidence adduced be sufficient to establish that rezoning, lowering the use restrictions, is reasonably probable in the near future. However, we did not intend in *Hunt* to attribute magic to the phrase "in the near future." What is essential is that the evidence, standing uncontradicted and unimpeached, tend to establish that such a rezoning of the land reasonably could have been available at the time of the taking thereof. *Hunt* does not contemplate that such rezoning must have preceded the taking, but rather that the evidence be sufficient to support a reasonable finding that such rezoning was definitely more than a mere future possibility.

We hold, then, that evidence sufficient to warrant a finding that such rezoning was reasonably probable must be of such a nature as to establish, if uncontradicted, that the use restrictions then in effect on the land were inconsistent with the comprehensive plan pursuant to which the ordinance was enacted.[2] In short, the evidence must be such as to constitute a prima facie case on the basis of which a court of equity, pursuant to its coercive power, could, in an exercise of sound judicial discretion, require a recalcitrant local legislature to lower the use restrictions on the land to make them consistent with the comprehensive plan. We hold that such evidence, when adduced, is sufficient to support a finding that such a potential change in the use restrictions on land is an element to be considered in reaching a determination of the fair market value of the land at the time of the taking.

[2]General Laws 1956 (1970 Reenactment) §45-24-3 provides that zoning regulations "* * * shall be made in accordance with a comprehensive plan * * *. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such town or municipality."

In this state the validity of zoning use regulations is entirely dependent on their consistency with the comprehensive plan pursuant to which such regulations were enacted.[3] *Cianciarulo* v. *Tarro,* 92 R. I. 352, 168 A.2d 719 (1961); *Town & Country Mobile Homes, Inc.* v. *Inspector of Buildings,* 93 R. I. 383, 175 A.2d 556 (1961). In *Cianciarulo* we made it clear that strict compliance with the comprehensive plan is required of a local legislature when it enacts a zoning ordinance. The statutory requirement for a comprehensive plan was designed to avoid an arbitrary, unreasonable, or capricious exercise of the zoning power that would result in haphazard or piecemeal zoning. In other words, restrictions on the use of land provided for in a zoning ordinance must at all times be consistent with the comprehensive plan. In *Cianciarulo* we held that the amendment to the ordinance under attack was shown by the evidence to be consistent with the comprehensive plan and that, therefore, it was within the power of the legislature to enact such an amendment. The clear implication of *Cianciarulo,* however, is that where the use restrictions imposed upon a particular parcel of land by the ordinance are inconsistent with the comprehensive plan pursuant to which that ordinance was enacted, it is the obligation of the local legislature to amend the ordinance so as to eliminate arbitrary or discriminatory classifications that tend to promote the interest of some landowners while discriminating against the interest of other landowners similarly situated. *Hadley* v. *Harold Realty Co.,* 97 R. I. 403, 198 A.2d 149 (1964).

We turn, then, to the question of whether the evidence adduced through Mr. Laudati comes within the purview of the rule set out in *Hunt.* We consider, first, the 84.44

---

[3] We are persuaded from the context in which Mr. Laudati's testimony was adduced that the only issue before us relates to the amendment of a zoning ordinance by action of a local legislature.

acres comprising the back land, so called. It is our opinion that the testimony of Mr. Laudati on the question of the probability of rezoning of this land in the near future was pure conjecture. It obviously rested only on his personal belief that at some future time conditions might develop in the area that would bring about a rezoning of all or a part of the back portion of the tract. It was utterly lacking in probative force on the question of the probability of the back acreage being rezoned in the near future but for the taking. It is our conclusion, then, that there was no evidence in the record from which the trial justice could reasonably have drawn an inference that there was a probability that the back acreage would have been rezoned but for the taking.

Mr. Laudati testified also as to the reasonable probability that the 2.06 acres abutting on Hartford Avenue would be rezoned had not the taking intervened. Clearly, implicit in Mr. Laudati's testimony as to the 2.06 acres is his conclusion that the restrictions on the use of these two acres were inconsistent with the comprehensive plan. He testified that there were at least three other commercial uses in the immediate vicinity of these two acres and that there was a pattern of rezoning of residential areas abutting on Hartford Avenue that had been developing over a period of years. It is our opinion that this evidence is sufficient to support a finding that a rezoning of the 2.06 acres would have been probable in the near future but for the taking.

Here the parties have submitted the controversy to a justice of the Superior Court sitting without a jury. As we have so often held, in such circumstances the findings of the trial justice will be given great weight and not be disturbed by this court unless it is clear that the trial justice either overlooked or misconceived material evidence on a controlling issue. *Cunningham* v. *Marcello*, 106 R. I. 400, 260 A.2d 451 (1970); *McHale* v. *Director of Public*

*Works,* 100 R. I. 770, 219 A.2d 766 (1966). It is clear that the trial justice accepted the opinion of Mr. Laudati as to the reasonable probability that these two acres would be rezoned, and his valuation thereof at the time of the taking as being $31,500. We are unable to agree that, in so doing, she either overlooked or misconceived any of the evidence so adduced.

In reality, the trial justice drew a reasonable inference from the facts testified to by Mr. Laudati that there was a reasonable probability that the land could have been rezoned in the near future but for the taking. As we noted in *Labbe* v. *Hill Brothers, Inc.,* 97 R. I. 269, 197 A.2d 305 (1964), it may be that more than one reasonable inference may be drawn from the same evidentiary facts, but, as we said in *Labbe,* the mere existence of contrary inferences in which probability inheres does not preclude acceptance by the trial justice of one of these inferences as being probative of the facts in issue. It is our opinion that the trial justice drew such an inference from the facts testified to by Mr. Laudati, that such an inference was reasonable, and that, therefore, her conclusion that the 2.06 acres abutting on Hartford Avenue had a market value of $31,-500 at the time of the taking was proper.

It is our conclusion that there is in the record no competent evidence that will support a finding of a reasonable probability that the 84.44 acres comprising the back land would have been rezoned in the near future but for the taking. That being so, it is our opinion that the cause should be remanded to the Superior Court for a reassessment of the fair market value of the tract taken as a whole without a consideration of whether the 84.44 acres comprising the back land was enhanced in value by the probability of rezoning in the near future but for the taking.

The appeal of the state is sustained in part, and the

cause is remanded to the Superior Court for further proceedings in accordance with this opinion.

Petition for reargument denied.

*Arcaro, Belilove & Kolodney, Abraham Belilove,* for plaintiff-appellee.

*Richard J. Israel,* Attorney General, *W. Slater Allen, Jr.,* Asst. Attorney General, for defendant-appellant.