DECISION
Plaintiff, Altus Realty Company, ("Altus") brings this action against Narragansett Bay Commission, ("NBC"). Defendant acquired a permanent easement by eminent domain to a section of certain property owned by Plaintiff. NBC valued the permanent easement at $200,040, and paid Altus $200,500. Altus disputes that valuation and seeks additional compensation for the taking of its property. This case was tried before the Court sitting without a jury on March 2, 2011, March 7, 2011, and March 8, 2011. After consideration thereof, the Court finds that Defendant's valuation of the permanent easement reflects just compensation for the taking of Plaintiff's property. Accordingly, the Court enters judgment for the Defendant.
In accordance with Rule 52, Rhode Island Rules of Civil Procedure, when deciding a case tried before the Court without a jury, the Court shall find the facts specially and state separately its conclusions of law. The trial justice need not make an extensive analysis of his or her findings and conclusions, but must address and resolve the pertinent, controlling factual and legal issues.J.W.A. Realty, Inc. v. City of Cranston,121 R.I. 374, 399 A.2d 374 (1979); White v. LeClerc,468 A.2d 289 (R.I. 1983). *Page 2 
With this well established standard in mind, the Court has considered the factual issues and applicable law pertinent to the instant matter. The evidence consisted of a joint statement of stipulated facts ("Joint Statement") as well as testimony from two witnesses, experts on behalf of each party. Each party offered exhibits at trial in support of their respective valuations. Following the trial, both parties submitted post-trial memoranda.
Plaintiff is a Rhode Island Corporation. The Defendant is a public corporation which was established to improve the water quality in the Narragansett Bay. NBC has the power to acquire easements and/or land by condemnation pursuant to Rhode Island statutory law.
The subject property is located at 10 Charles Street in Providence, in a D-100 Zoning district. The only pertinent zoning restriction with respect to the property limits the height to one hundred feet, which is the equivalent to approximately eight stories. Altus purchased the entire parcel, including the area in question, on March 7, 2002 for $5,880,000.
As a result of a Consent Agreement with the Rhode Island Department of Environmental Management, NBC was required to develop a Combined Sewer Overflow Abatement Program ("CSO"), i.e., a plan to construct a facility and infrastructure to control the combined sewer overflow into the Narragansett Bay. (Joint Statement of Undisputed Facts). To comply with this Agreement, NBC had to acquire certain easements, including the easement in question.
On January 7, 2004, NBC acquired a permanent easement in a portion of the Altus property by eminent domain (Title 37, Chapter 6 and Title 46, Chapter 25 of the General Laws of Rhode Island). The easement is approximately 13,336 square feet in size. Both parties agree as to the nature of the limitations placed on the Altus property as a result of the easement. Those limitations include restrictions on the construction of buildings within the permanent easement area. Subsurface and air rights have been diminished. However, surface rights remain intact, in *Page 3 
other words, the ability for continued parking, storage, and crossing of the easement area remains. Both parties agree that the permanent easement reduced the value of the area taken by seventy-five percent.[1] The effective date for purposes of determining the value of the property taken is September 9, 2003.[2]
On May 15, 2006, NBC paid Altus $200,500 in accordance with R.I.G.L. § 37-6-17. Defendant would have been credited with this payment had the Court found that the payment was insufficient.
Article I, section 16, of the Rhode Island Constitution protects the rights of property owners by providing that "[p]rivate property shall not be taken for public uses, without just compensation." It is well settled that the measure of damages to be awarded as just compensation for the condemnation of private property is the fair market value of the property as of the date of the taking.Serzen v. Director of the Dept. of Environmental Management,692 A.2d 671, 673 (R.I. 1997); Ocean Road Partners v. State,612 A.2d 1107, 1110 (R.I. 1992); O'Donnell v. State,117 R.I. 660, 665, 370 A.2d 233, 236 (1977). The fair market value should be determined on the basis of the most advantageous and valuable use of the property, sometimes called the highest and best use, that is consistent with existing land use regulations, but compensation will not be awarded for an illegal use.Serzen, 692 A.2d at 673, 674; Ocean Road Partners,612 A.2d at 1110; Palazzi v. State,113 R.I. 218, 223, 319 A.2d 658, 661-62 (1974). In the event the offer by the condemning authority is disputed and judicial relief is sought, "the litigant should receive just compensation but not a penny more." Nasco, Inc. v. Director of Public Works,116 R.I. 712, 721, 360 A.2d 871, 876 (1976). *Page 4 
Ordinarily, the best estimates of fair market value are the "prices paid in the open market at or about the time of the taking for substantially similar and comparable properties, when available and when proper adjustments can be made for minor differences between the properties." J.W.A. Realty, Inc. v. City ofCranston, 121 R.I. 374, 380, 399 A.2d 479, 482 (1979). "Significant factors that affect comparability include location and character of the property, proximity in time of the comparable sale, and the use to which the property is put." Warwick MusicalTheatre, Inc. v. State, 525 A.2d 905, 910 (R.I. 1987). The availability of comparable sales evidence "will generally serve to exclude the use of other methods of deducing fair market value."Capital Properties, Inc. v. State,636 A.2d 319, 321 (R.I. 1994).
At trial, each party presented an expert witness in support of its position. Both experts applied the comparable sales approach to determine the fair market value of the property, but their results differ. They disagree significantly as to the value of the permanent easement at the time of the taking. The Court has considered all of the evidence, weighing the credibility of the witnesses and exhibits. After doing so, the Court finds the testimony and report of Defendant's expert, Mark F. Bates, more persuasive than the testimony and report of Plaintiff's expert, William J. McGovern.
The law pertinent to cases such as this is clear. When considering expert opinion, the Court may accept the opinion of one expert, while rejecting the opinion of another. See Sun-LitePartnership, 838 A.2d 45, 48 (R.I. 2003). The trial justice has the authority to determine the credibility of each expert and to decide whether to accept or reject some or all of his or her testimony. Id. It is within the discretion of the trial justice to find one expert's comparables more probative than another. See Conti v. R.I. Econ. Dev. Corp.,900 A.2d 1221, 1238-39 (R.I. 2006). *Page 5 
Each expert considered five comparable properties with each of them using two of the same sales as comparable to the instant taking. Even as it relates to those two properties, the experts disagree as to the adjusted value of the sales.
Both experts considered such factors as location, land area, highway access, site access and zoning. Plaintiff's expert made an additional adjustment based upon an element of comparison he referred to as the "utility" of the property. Defendant's expert did not include "utility" as a separate category when making his adjustments. The Court rejects McGovern's explanation of this factor and finds that his "utility" adjustment duplicated other adjustments he made under other categories and artificially inflated the sales he analyzed.
The Court is mindful of the fact that Plaintiff purchased the subject property in March 2002 for $5,888,000. The Court finds that such purchase price had significant probative value in determining the value of the property eighteen months later. Bates considered the March 2002 sale of this property when checking the reasonableness of the other values he found. He testified that there is a rule of thumb for downtown properties that values the land at fifty percent and the improvements at fifty percent of the total value of the property. Accordingly, based upon the aforementioned purchase price and this rule of thumb, he concluded that Altus paid $2,940,000 for the land and an equal amount for the improvements.
Dividing that number by the total square footage of the land, he determined that Altus paid $18.17 per square foot when Plaintiff purchased the property. The reliability of this reasonableness test is buttressed by Mr. McGovern's own testimony that the market remained fairly stable from 2001 to 2004. In fact, when considering a comparable property which had sold in 2001, McGovern made no adjustment based on date of sale. The Court accepts Bates' breakdown of 50% attributable to land and 50% attributable to improvements. As such, the *Page 6 
Court gives great weight to evidence that the subject property sold for $18.17 per square foot in March 2002.
In determining to give greater weight to the testimony and opinions of Bates, the Court also considered certain weaknesses in the evidence offered by McGovern. The Court refers to a comparable sale relied upon by Mr. McGovern which is located at 155 Clifford Street. In determining the adjusted value of this comparable sale, McGovern added the sales price to the estimated cost of demolition. He made a $100,000 mathematic error in adding the two numbers. On cross-examination, when counsel for Defendant confronted McGovern with his mathematical error, the Court found his response confusing, and his effort to address the discrepancy was not persuasive.
Another comparable sale used by Mr. McGovern was sold fourteen months after the effective date. It was located at 671 and 677 Eddy Street. McGovern expressed an opinion that market conditions were stable from September 2003 to November 2004. The Court agrees that it should not exclude evidence of comparable sales simply because they occurred after the effective date of the sale or the taking of the subject property. See Manning v.Redevelopment Agency of Newport, 238 A.2d 378, 381 (R.I. 1968). However, in determining the weight to give to such evidence, the Court may choose to give it less weight compared to the weight it affords evidence of sales made shortly prior to the effective date if the facts and circumstances warrant it. The Court notes that there was no evidence presented as to whether the taking of the subject property had an effect on the value of the Eddy Street property fourteen months after the effective date. Seeid.
Plaintiff argues that Bates' comparables were dated and that McGovern's selections were superior to the sales reviewed by Bates. The Court agrees that Bates might have omitted his so-6 *Page 7 
called comparable located on Harris Avenue. Bates himself acknowledged that this sale was a "throw away." The Court notes that another comparable reviewed by Bates which was located on North Street was so inferior to the subject property to put into question its value as a comparable. In spite of these deficiencies, the Court still gave more weight to the testimony and opinion of Bates than it did to that of McGovern.
Bates also relied upon a property located at Harrison and Kinsley that sold in two parts, one in 1998 and the rest in 2001. Although these transactions were not close in time to the subject taking, the Court did not consider them so dated as to have no value as a comparable sale. The total sale on the Harrison and Kinsley property had a value of $16.37 per square foot. After Mr. Bates made his adjustments, he opined that the value of the property was $19.81 per square foot.
Both McGovern and Bates considered the July 2001 sale of property located at 71 Ship Street. That property sold for $40.22 per square foot. Mr. McGovern's report describes the property as inferior to the subject property. After his adjustments, he found that it had a value of $60.33 per square foot.
Mr. Bates found the property at 71 Ship Street to be superior to the subject property. After making his adjustments, Bates found the adjusted value to be $20.10 per square foot.
Both experts considered the May 1997 sale of property located at 181 Chestnut Street. This property sold for a value of $18.62 per square foot several years before the effective date of the taking in this case. Bates made a market adjustment of twenty percent, but made no other adjustments because of what he described as the similarity of the properties. He found that the property had an adjusted value of $22.34. McGovern made other adjustments. He concluded *Page 8 
that the property was inferior to the subject property and raised the adjusted value to $36.71 per square foot.
The Court was impressed with the clarity of Mr. Bates' testimony. He appeared to provide clear and credible explanations as to his calculations. The Court found Mr. McGovern's testimony less persuasive, particularly after rejecting his consideration of "utility" as an additional element of comparison. For all of the reasons set forth in this Decision, the Court rejects the opinion of Mr. McGovern and accepts Mr. Bates' appraisal of the property as of the effective date at $20.00 per square foot.
After consideration and review of the evidence and applicable law, the Court finds for the Defendant. Counsel shall submit an appropriate judgment for entry.
[1] No damage was caused to the remainder of the Altus real estate, and Plaintiff does not seek relief for severance damages.
[2] Throughout this decision, when the Court refers to "effective date" it is referring to September 9, 2003.

 *Page 1