ASSEMBLY OF GOD CHURCH OF PAWTUCKET, R. I. *vs.*
JOSEPH M. VALLONE, *Director of Public Works.*

APRIL 9, 1959.

PRESENT: Condon, C. J., Roberts and Paolino, JJ.

2

PAOLINO, J. This is a petition under public laws 1953, chapter 3105, sec. 11, for the assessment of damages caused through the taking by eminent domain on December 20, 1956 of petitioner's real property by the state for freeway purposes. The condemnation was effected pursuant to the provisions of P. L. 1953, chap. 3105, and general laws 1938, chap. 75, §2, as amended. The property consisted of a parcel of land with buildings and improvements thereon which were used for church purposes. The respondent herein will sometimes be referred to as the state.

The parties waived a jury trial and thereafter the case was heard by a justice of the superior court. Prior to such hearing they had agreed that petitioner had a fee simple title in the condemned premises; that the petition was properly before the court; and that the only issue remaining for the determination of the trial justice was the value of the property taken. The written appraisals of experts for both petitioner and respondent were admitted in evidence by agreement of the parties. The only other evidence was the oral testimony of an expert presented by petitioner. After the hearing the trial justice entered a decision awarding petitioner damages in the sum of $105,450. The case is now before us on respondent's exception to such decision.

The property in question consisted of two adjoining parcels of land. On the first parcel there was a two and one-half story building which was originally built for a residence between 1910 and 1915. Sometime after its construction it had been extensively remodeled for use as a church and was so used by petitioner. On the second parcel there was a two-story brick and cement building which had been remodeled and converted into a rectory or parsonage. As remodeled it consisted of a three-car garage and an office on the first floor and a five-room apartment on the second floor. The property also had a paved parking area, many well-developed trees and flowering shrubbery, an excellent lawn and other improvements.

In the written appraisal of Charles H. Lawton, Jr., which had been presented by petitioner, Mr. Lawton stated that the highest economic use of the property in question was for church and parsonage purposes as it was then being used; that properties similar to the condemned premises were not available for purchase at any price and that they just did not exist; and that in placing a value on said property he had taken into consideration the economic factors involved, the replacement cost of land and buildings and the use to which the property was being put.

In deciding what in his opinion was the fair market value of the property condemned, Mr. Lawton estimated the cost of replacing the structures with comparable materials and facilities at $137,520, from which he deducted 30 per cent, or $41,256, as reasonable depreciation due to physical and economic factors, making the net value of the buildings $96,264. On the basis of these figures he further reduced his estimate of the value of the buildings to $94,000. He placed a value of $12,000 on the land and stated in his opinion that the fair market value of the property was $106,000.

John L. Marshall, who qualified as an expert in construction work, was presented by petitioner for the sole purpose of testifying as to the replacement costs of the buildings and other improvements on the land. He stated in substance that he had examined the church and parsonage; that the church building was in excellent condition; that it was constructed of the best materials especially made for it; and that the property was ideal for use as a church but would have no market for any other use. He estimated that the total cost of reconstructing the buildings and other improvements on the land would be $125,840. He stated that he felt a 25 per cent depreciation rate would be a fair deduction from said reconstruction costs and concluded that at the time he examined the property the net value of the buildings and other improvements, exclusive of the land value, was $94,300. It appears from the record that no

objection was made to any portion of Mr. Lawton's written appraisal or to any part of Mr. Marshall's testimony.

As we have already noted, the only evidence presented by respondent was two written appraisals by a real estate expert, Leo V. Boyle. These were also admitted without objection. The first of these related to the land on which the parsonage stood. Mr. Boyle valued the land at $4,350 and the improvements at $14,200, a total of $18,550. He stated that his "Judgment of value is integrated from level of land values in the area, plus the depreciated reproduction cost of the improvements." He also stated that "Comparable approach could not be used for there are no similar properties of which sales records are available." This report also observes that the building is appropriate for its use and is especially suitable for it.

Mr. Boyle's other written appraisal relates to the land on which the church building is located. He placed a value of $6,800 on this land and $31,700 on the improvements thereon, making a total valuation of $38,500. In his report he stated: "Land value has been integrated from few sales made in the general area, adjusted for time lapse and differences in comparability. Estimate of building is on basis of replacement cost less depreciation, and confirmation is found in a consideration of a theoretical one story building built especially for this particular use, i.e. church, and sunday school, and which would provide the facilities now furnished by the present building." Mr. Boyle further stated that a good one-story brick building with basement could be built for about $40,000; that after allowing for depreciation of 25 per cent the value would be $30,000; and that this amount plus the value of the land and other improvements would amount to $39,200. Thus it appears that the state's total appraisal for both parcels as of the date of condemnation was $57,050, or $57,750 if Mr. Boyle's estimate of $39,200 is adopted.

In his decision the trial justice stated in effect that the parties had agreed that the value of the property taken was the sole issue. In referring to the appraisals of Mr. Lawton and Mr. Boyle, he stated that he was familiar with the integrity and long experience of both as real estate dealers, agents and appraisers and that he had confidence in them. However, after commenting on the qualifications of Mr. Marshall with reference to his expert knowledge of reproduction costs, the trial justice said that he placed great weight on the testimony of Mr. Marshall.

He also stated in substance that the state is required to pay in full the cash value of the property taken; that in the absence of evidence of comparable sales it was necessary to use some other method of valuation; and that in so far as the church building was concerned petitioner was entitled to replacement cost less depreciation. On the basis of the record before him he accepted as fair the state's valuation of the land at $11,150 and Mr. Marshall's figures on replacement cost of improvements less depreciation, namely, $94,300. In arriving at the final amount of damages he made some small allowance for the differences between the appraisals, added interest at 6 per cent from the date of taking, and rendered a decision for $105,450.

The respondent's exception is based on the contention that the trial justice should have considered, along with the evidence of reproduction cost less depreciation of the property taken, the cost of producing comparable property having facilities for a church and rectory equivalent to those provided by the condemned property. The respondent argues that the use of reproduction cost less depreciation as a measure of damages led the trial justice to exclude from his consideration that portion of the appraisal made by the state's witness, Mr. Boyle, which dealt with the cost of building a "theoretical" one-story church as distinguished from the cost of reproducing the church which had been condemned. He further contends that the trial jus-

tice should have adopted a measure of damages based on the price which a congregation willing to buy would pay to a congregation willing to sell and that in order to arrive at the correct figure, if he had used this method, he would have had to take into consideration the cost of producing equivalent facilities.

We deem it pertinent to point out that it appears from the state's written appraisals that the statement concerning what it would cost to build the "theoretical one story building built especially for this particular use, i.e. church, and sunday school, and which would provide the facilities now furnished by the present building" related only to the church building. The appraisal contains no such statement in so far as the parsonage and the other improvements are concerned. We must therefore assume that the state's contention that the trial justice erred in failing to consider at all the cost of reproducing equivalent facilities relates only to the church building. In so far as the other building and improvements are concerned the only evidence before the trial justice was the value based on reproduction cost less depreciation, and as already noted the state agreed to the introduction of this evidence.

The petitioner contends that the issues now raised for the first time by respondent are not properly before us since they were not raised in the superior court. However, we shall assume for the purposes of this discussion that respondent can argue these issues under his exception to the decision of the trial justice.

It is clear that the only issue presented for the determination of the trial justice was the question of the value of the property taken. There is no serious dispute with respect to the valuation placed on the land. The appraisers for both parties submitted their opinions as to the land value, and the trial justice was warranted in adopting the state's valuation in preference to that of petitioner. The

appraisers also submitted their respective opinions as to the value of the parsonage and the other improvements. Because of the specialized nature of the property taken, none of the experts was able to present the usual evidence of comparable sales to aid the trial justice in deciding the market value of this property. The only evidence before him relating to the parsonage and other improvements was the expert opinions of the appraisers for both parties and such evidence was clearly based on their respective estimates of depreciated reproduction costs. Neither party objected to the introduction of this evidence. The trial justice placed great weight on the evidence of petitioner's experts and relied on their opinions in reaching his decision as to the value of the parsonage and other improvements. We are of the opinion that he was justified in so doing and respondent has not convinced us that he erred in this respect.

The respondent's principal contention is that the trial justice erred in awarding damages with respect to the valuation placed by him on the church building. He argues that he failed to consider the evidence submitted in Mr. Boyle's appraisal with respect to the cost of a "theoretical" one-story church building. A careful reading of that appraisal shows that Mr. Boyle employed the reference to the cost of a one-story brick building to *confirm* his previous estimate of the value of the condemned church building on a depreciated replacement cost basis. In his decision the trial justice referred to Mr. Boyle as an expert who possessed integrity and had long experience. It is reasonable to assume that his testimony was considered but that the trial justice placed no weight thereon. However, as we have already stated, Mr. Boyle's appraisal as to land value did carry weight with him. In these circumstances we would not be justified in assuming that he did not consider all of the state's evidence, including Mr. Boyle's reference to the cost of the "theoretical" one-story building. In our

opinion there is no merit to respondent's contention that the trial justice failed to consider such evidence.

We have uniformly held that where the parties submit their case on both the law and facts to a trial justice sit- ting without a jury his decision is entitled to great weight and will not be set aside unless it is clearly wrong and fails to do substantial justice between the parties. *Bruin Paper Box Inc.* v. *Anthony Creations, Inc.*, 84 R. I. 495, 498. Al- though the state has failed to convince us that the trial justice did not consider certain evidence which it deemed worthy of great weight, we are of the opinion that its gen- eral contention that the trial justice erred in applying cost of reconstruction less depreciation as the measure of dam- ages requires our consideration.

Section 16 of article I of the constitution of Rhode Island provides that private property shall not be taken for pub- lic uses without just compensation. In *United States* v. *Miller,* 317 U. S. 369, 373, the court said that just compen- sation means "the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his prop- erty had not been taken." The general rule is that the measure of damages to be awarded as compensation for property taken in eminent domain proceedings is the mar- ket value of the property. *Hall* v. *City of Providence,* 45 R. I. 167, 168. Where there are buildings on the land taken, market value is the value of the land and buildings as a unit. *Hervey* v. *City of Providence,* 47 R. I. 378, 380. Fair market value has also been defined as "the amount of mon- ey which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land was adapted and might in reason be applied." 4 Nich- ols, Eminent Domain (3d ed.), §12.2 [1], p. 32. The fore- going generally applies to properties which have an active.

market and where market value would reflect the money equivalent to insure just compensation.

However, where the property taken is of a peculiar character or has a special use for which it is adapted, such as here, if it is highly improved with additions suitable to that use it generally has no active market and therefore it is impossible to prove the fair market value by evidence of comparable sales. This problem was recognized in *United States* v. *Miller, supra,* wherein the court stated at page 374: "Where, for any reason, property has no market, resort must be had to other data to ascertain its value * * *." There is a marked difference of opinion as to the competency of reproduction cost less depreciation as evidence of value. See 5 Nichols, Eminent Domain (3d ed.), §20.2 [1] and [2], p. 244.

In *Hall* v. *City of Providence, supra,* where the opinions of the real estate experts were not based upon actual sales of similar farms in like situations, it was held that the trial justice properly allowed petitioner to submit evidence of the amount expended by him in placing the property in the condition in which it was at the time of its condemnation. The court there stated that where "the market value of the estate in question could not be determined by reference to previous sales of similar properties, in the open market, between willing buyers and willing sellers," evidence of the cost of improvements was properly admitted as one of the elements to be considered by the jury in estimating petitioner's damages.

In *Hervey* v. *City of Providence, supra,* the court in effect held that it is the market value of the land together with the improvements thereon, viewed as a whole and not separately, which must be determined. On this basis we stated at page 380: "Where there are buildings, evidence by a builder alone of their value as separate items from the market value of the land is not admissible." In that case, where there was evidence of similar sales, the court stated

at page 381 that the case of *Hall* v. *City of Providence,* lacking as it did evidence of comparable sales, was "an exception to the general rule and not an alteration of the rule."

In the instant case the respondent has not shown that the trial justice overlooked or misconceived any of the pertinent evidence. It is our opinion that, in so far as the record relates to the parcel of land on which the parsonage was located, the trial justice did not err in considering the only evidence he had before him, namely, as to land value and other improvements, and depreciated reproduction cost of the parsonage, to assist him in determining the market value of the property taken. With respect to the parcel of land containing the church building, the respondent has not convinced us that the trial justice failed to consider the estimated cost of a "theoretical" one-story church building which Mr. Boyle stated was in confirmation of his previous estimate in the same appraisal based on a depreciated reproduction cost basis. In view of the absence of any other evidence relating to the parcel containing the church building, it is our opinion that the trial justice did not err in considering such evidence as he had before him to assist him in determining the amount of damages to which petitioner was entitled as just compensation for the value of the property taken by the state.

We believe that this conclusion is consistent with the reasoning of the court in *Hall* v. *City of Providence, supra.* That case involved a valuable and highly improved farm which was used by its owner as a country estate. There was evidence in that case of sales of ordinary farms and of property of much less value, but no evidence of sales of similar farms. In the instant case there is not only no evidence of sales of similar property but the only evidence is the depreciated reproduction cost of the buildings taken and the value of the land exclusive of the buildings. In such circumstances we cannot say that the trial justice was clearly

wrong, or that he failed to apply the correct law, or that he has failed to do substantial justice between the parties. Therefore we cannot disturb his decision.

The respondent's exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Crowe, Hetherington & Chester, Benjamin C. Chester,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Archie Smith,* Assistant Attorney General, for respondent.