OCEAN ROAD PARTNERS et al.

v.

STATE of Rhode Island et al.

No. 91–616–Appeal.

Supreme Court of Rhode Island.

July 15, 1992.

Thomas C. Angelone, Hodosh, Spinella & Angelone, William P. Robinson, III, Alica Murphy Edwards & Angell, Providence, for plaintiff.

Brendan V. Sullivan, Jr., Washington, D.C., Joseph V. Cavanagh, Jr., Michael P. DiBiase, Blish & Cavanagh, Providence, John Kester, Philip J. Deutch, Washington, D.C., for defendants.

Before FAY, C.J., and KELLEHER, WEISBERGER, MURRAY, and SHEA, JJ.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on appeal by the State of Rhode Island from a judgment entered in Superior Court awarding Ocean Road Partners $15.5 million plus interest as compensation for the condemnation of 44.6 acres of land in Narragansett, Rhode Island. For the reasons that follow, we vacate the judgment of the Superior Court and remand for a new trial.

The events giving rise to this litigation began on November 9, 1984. On that date Ocean Road Partners (or plaintiffs), a limited partnership controlled by the Downing Properties Company, purchased 67 acres of oceanfront property in Narragansett, Rhode Island. Included in the 67 acres was a 44.6-acre tract of land that is commonly referred to as Black Point. The plaintiffs allocated $2 million of the total purchase price as the expense for purchasing Black Point. Downing Properties Company is in the business of developing luxury housing. It formed Ocean Road Partners for the purpose of developing luxury housing at Black Point.

Black Point is a parcel of land that lies directly to the north of Scarborough State Beach in Narragansett and contains approximately 3,800 feet of shoreline. At the time of the purchase, Black Point was completely undeveloped. The zoning of the land was R–40. That classification required that only single-family residential structures could be built on the parcel and that each structure was required to be on a 40,000-square-foot lot. After making the purchase, plaintiffs, in keeping with the business philosophy of Downing, undertook a study to determine the most profitable use of the land.

As a result of the study, plaintiffs decided that an eighty-unit luxury condominium development would be the best and most profitable use of the land. In order to put an eighty-unit condominium development at Black Point, plaintiffs had several obstacles to overcome.

The first and foremost obstacle was zoning. The plaintiffs needed to have the zoning for Black Point changed so condominiums could be built on the property. In December 1984 or in January 1985 they applied for a zoning change, which was granted by the town council of Narragansett. Pursuant to the grant of the zoning change, plaintiffs were then required to seek a special exception from the Zoning and Platting Board (zoning board). On July 31, 1986, the zoning board granted the special exception and changed the zoning of Black Point to R–10. The R–10 classification, which would permit the building of an eighty-unit condominium development on the property, was granted with fifteen enumerated conditions and restrictions. One

of them was that the special exception would expire in one year, on July 31, 1987, unless: "the applicant exercised the permission granted or receives a building permit to do so and commences construction and diligently prosecutes the construction until completed." The zoning board also determined that a public right of way existed on the Black Point property. The board made a finding that:

"There is a ten-foot wide beaten down path/road (path) which runs the length of the easterly perimeter of the property and is located on dry ground immediately above the rocks and/or cliffs * * *. The only feasible, safe and convenient method of accessing the shoreline in this particular area is via the path which has been consistently and openly used by the public for that purpose for many decades."

The board emphasized that the change in zoning was conditioned on plaintiffs' agreement not to disturb the right of way.

The plaintiffs had purchased the property "as is" and were unaware of the public right of way. They promptly appealed to the Superior Court the zoning board's decision concerning the existence of a public right of way. The plaintiffs took the position that a public right of way that would permit "thousands coming from all over the State of all types of people" to walk on the beachfront of the development would significantly lower the value of the condominiums and in all likelihood destroy any chance that they would have of making a profit on the project. Before the zoning board, an expert took the position that the right of way "would be absolutely devastating to the project and just couldn't be." At trial on the condemnation, in which the value of the property was the issue, plaintiffs' witnesses took the position that the right of way was acceptable and not in any way a factor that would render the property less valuable for their purposes. However, their persistent and prolonged efforts to eliminate the right of way

contradict their trial testimony on that point.

The Superior Court eventually decided that the zoning board did not have jurisdiction to declare a public right of way. Instead the Superior Court held that the Coastal Resources Management Council (CRMC) was the proper agency to make this decision. The CRMC conducted at least a dozen hearings and meetings over the next two years. Eventually, on May 22, 1989, the CRMC determined that a public right of way did extend over the majority of the Black Point property. The plaintiffs' appeal from the CRMC decision affirming the existence of the right of way was pending at the time the condemnation occurred.

On November 16, 1987, however, several months after the special exception expired, the town of Narragansett enacted a new, comprehensive zoning ordinance.[1] One effect of this new ordinance was a rezoning of the Black Point property to R–80. This new zoning classification did not permit the eighty-unit condominium development as envisioned by plaintiffs. Rather the R–80 zoning permitted only single-family dwellings with two-acre-lot minimums. This new zoning classification occurred almost two years before the condemnation by the state.

On July 7, 1989, the Department of Environmental Management (DEM), acting on behalf of the state, filed a statement of condemnation. The DEM offered Ocean Road Partners $6,448,000 for the Black Point property. In a letter dated July 11, 1989, they rejected DEM's offer to purchase the property for $6,448,000. However, pursuant to G.L.1956 (1990 Reenactment) §§ 37–6–17 and 37–6–18, they exercised their right to receive that amount of money and to petition the Superior Court for an assessment of damages.

A nonjury trial was held pursuant to § 37–6–18. Judgment was entered on October 8, 1991, awarding Ocean Road Partners $15.5 million plus interest of $2,523,-

---

1. A joint stipulation of facts submitted by the parties lists the date of the comprehensive rezoning as November 26, 1987. Our review of the rezoning act, however, reveals that it was passed and enacted on November 16, 1987.

265 for a total of $18,023,265 minus payment of $6,486,033 for a total of $11,536,-232 in damages resulting from the July 7, 1989, condemnation of Black Point by the state.

 We note at the outset that article 1, section 16, of the Rhode Island Constitution provides that "[p]rivate property shall not be taken for public uses, without just compensation." It has long been established as the general rule in Rhode Island that the measure of damages to be awarded as compensation for property taken in condemnation proceedings is the fair market value of the property. *J.W.A. Realty, Inc. v. City of Cranston,* 121 R.I. 374, 380, 399 A.2d 479, 482 (1979); *Assembly of God Church v. Vallone,* 89 R.I. 1, 9, 150 A.2d 11, 15 (1959). The fair market value of the property is to be assessed as of the time of the actual taking. *O'Donnell v. State,* 117 R.I. 660, 665, 370 A.2d 233, 236 (1977); *L'Etoile v. Director of Public Works,* 89 R.I. 394, 401, 153 A.2d 173, 177 (1959). Moreover, compensation in condemnation proceedings should be based on the most advantageous and valuable use for the condemned land, sometimes referred to as the highest and best use. *Sweet v. Murphy,* 473 A.2d 758, 761 (R.I.1984). Thus, it is the duty of the trial justice in a nonjury trial for condemnation damages to determine the market value of the condemned property at the time of the condemnation when the property is put to its most advantageous and valuable use.

 The first issue raised by the state concerns the zoning classification of Black Point at the time of the condemnation. The state contends that the trial court erred by failing to consider that the actual zoning for Black Point at the time of the condemnation did not permit an eight-unit luxury condominium development, and that the special zoning exception issued to plaintiffs on July 31, 1986, expired on July 31, 1987. Consequently, the state argues, the trial court's determination of the value of Black Point was flawed because it was based on the premise that an eighty-unit condominium could be developed. Both sides argued this issue before the trial

court, but it was not addressed in the decision below.

In opposition to the state's appeal, plaintiffs advance several arguments. They take the position that the trial court did not ignore the actual zoning of Black Point at the time of the condemnation. They argue that the rejection of the state's position is clearly implied in the trial court's decision. They contend that a state expert conceded on the stand that the Black Point property should be apprised as zoned to permit an eighty-unit condominium development. They also argue that the 1987 zoning change did not revoke the special exception that had been previously granted by the town of Narragansett because they had acquired an equitable right to use the land as previously zoned and a new zoning ordinance could not take away this right. They claim that the special zoning exception did not expire because G.L.1956 (1991 Reenactment) § 45–24–19(2) mandates that when a zoning board imposes a period within which conditions that it creates must be met, the running of the period is tolled during the pendency of any necessary application before a board or during the pendency of an appeal. Finally plaintiffs contend that the CRMC, after communicating with the town of Narragansett, had ruled that Black Point was zoned to permit construction of an eighty-unit condominium development. After a review of the record and the arguments advanced we are of the opinion that the property was not zoned for an eighty-unit condominium development on the date of condemnation.

 It is well established that condemned land must be valued in light of existing zoning restrictions and not on the basis of an unlawful use. *Palazzi v. State,* 113 R.I. 218, 222–23, 319 A.2d 658, 661–62 (1974); 4 Nichols, *The Law of Eminent Domain* § 12.322 (J. Sackman 3d rev. ed. 1985). It is equally well established that the value of property increases if the property is densely zoned. The trial justice correctly noted that "property which is zoned for a higher density of population is worth more than property without the same."

■ Findings of fact by a trial justice sitting without a jury are entitled to great weight and will not be disturbed on appeal unless the trial justice has overlooked or misconceived material evidence or was otherwise clearly wrong. *Pereira v. Tellier*, 583 A.2d 523, 524 (R.I.1990); *Green v. Green*, 559 A.2d 1047, 1048 (R.I.1989); *Smith v. Boyd*, 553 A.2d 131, 134 (R.I. 1989). In the present case, unfortunately, the decision about the value of the Black Point property, premised as it was on zoning that no longer applied, was clearly wrong. The new zoning classification had occurred almost two years before the condemnation of the property by the state. Each of the witnesses did assume that the zoning was or would again be compatible with the high-density condominium development when in fact it was not. Without a doubt this concurrence among the experts although incorrect misled the trial court. However, because the zoning has a direct and substantial impact on the value of the property condemned, we must order a new trial.

The comprehensive zoning ordinance passed by the town of Narragansett on November 16, 1987, was the zoning law applicable to the Black Point property at the time it was condemned. That zoning ordinance, as we have said, rezoned the property to a classification that permitted the building only of single-family dwellings with two-acre-lot minimums. The proposed condominium development was not a legal use of the property on the date of condemnation.

The testimony by the state's expert premised on the assumption that the Black Point property would be rezoned to accommodate an eighty-unit condominium at the time of the condemnation did not establish that fact to be true. The documents pertaining to the zoning on file in the town offices and entered as exhibits in this record establish that the witnesses' assumption was only conjecture. Statements of witnesses, even the state's witnesses, could not establish that applicable zoning regulations would be different from what they actually were at the time of the condemnation.

■ The plaintiffs also argued that the 1987 zoning change did not revoke the prior zoning approval because under the principle of equitable estoppel they had the right to use the land as it was previously zoned. That proposition is not correct in this situation. The plaintiffs rely on the reasoning in cases such as *A. Ferland & Sons, Inc. v. Zoning Board of Review of East Providence*, 105 R.I. 275, 279, 251 A.2d 536, 538 (1969) where we stated that "where the permittee has acquired an equity in the use authorized in the permit sufficient to justify its preservation from revocation, the amendment of the ordinance will be held not to operate so as to nullify that permit." In *Greenwich Bay Yacht Basin Associates v. Brown*, 537 A.2d 988, 991 (R.I.1988) we held that the granting of equitable relief is extraordinary relief and will not be applied unless the equities clearly must be balanced in favor of the party seeking that relief. In that case we cited *Shalvey v. Zoning Board of Review of Warwick*, 99 R.I. 692, 699, 210 A.2d 589, 593–94 (1965), which stated that a holder of a building permit must proceed in good faith to initiate construction in some reasonably substantial measure or to incur some reasonably substantial obligations in performance of the use authorized by the permit. In this case the state concedes that plaintiffs have expended money on the project. That is not the only consideration, however. The state argues that the partnership had not even applied for the building permit within the year as required, and that most of its expenses were the result of preliminary planning and purchase of the land before the special exception was granted and in trying to eliminate the public right of way after the exception was granted.

An exhibit was introduced by plaintiffs summarizing costs they associated with the property. The exhibit, prepared by an officer of the Downing Corporation, contained no indication of the purpose for which the services were rendered. According to the exhibit the year the special exception was granted, plaintiffs had total expenses of $3,672,400. Testimony of plaintiffs' wit-

nesses disclosed that of this amount $2 million was the purchase price, $16,466 was accounting expenses, $113,289 was paid for real estate taxes, $706,291 was interest paid, $13,166 covered operating expenses, and $401,200 went to administrative charges, essentially salaries of the employees of Downing Corporation. It would appear, therefore, that $3,250,412 of the $3,672,400 represented the acquisition and maintenance of the property, not preparation to implement the special exception. The remaining $421,988, which covered architectural, engineering, legal, and consulting fees were admitted to be largely expenses incurred before or very soon after the land was purchased, part of usual preliminary planning. Furthermore, plaintiffs never applied for the building permit, never arranged for financing—in fact never attempted to do so—and of course never began construction. In *Greenwich Bay* this court held that the petitioners had failed to present evidence establishing either the undertaking of substantial obligations in reliance on or a good-faith pursuance of construction. We remanded so that such evidence could be presented. In this case the evidence presented persuades us that although the expenditures were substantial, they fail to meet the requirement that they were incurred in pursuance of the use authorized.

The 1987 comprehensive zoning ordinance in this case expressly provided that "[t]his ordinance shall take effect upon its passage and shall take precedence over any prior ordinance or parts of prior ordinances inconsistent herewith." It would be wrong to apply the reasoning that plaintiffs assert. It would directly contradict the intent expressed in the 1987 comprehensive zoning. "A court may not ignore the clear and explicit terms of a legislative act in order to effectuate an alleged unexpressed intent." *Campanella Corp. v. Zoning Board of Review of Middletown*, 106 R.I. 495, 498, 261 A.2d 644, 646 (1970).

■ The plaintiffs also argue that § 45–24–19(2)(b), which was enacted in 1988, mandates that the one-year period from the granting of the special zoning exception in

1986 was tolled because they had appealed the right-of-way issue to the Superior Court and then to the CRMC. As we have noted, the passage of the 1986 special zoning exception was conditioned on Ocean Road Partners' leaving the public right-of-way undisturbed.

Section 45–24–19(2)(b) provides in pertinent part:

"In granting a special exception or a variance * * * the board may impose reasonable conditions * * * [and] if the board or the ordinance imposes a time period within which to fulfill the conditions or to act upon the special exception or variance * * * then the time period shall be tolled during (i) the pendency before the agency * * * of an application or petition for the approval or consent, and during the pendency of all appeals, administrative, or judicial, therefrom, and (ii) the pendency of any appeal from the granting of any special exception or variance."

The statute above cited was enacted in 1988. The comprehensive rezoning occurred in 1987. Although the statute does toll the period set by a zoning board within which its conditions must be met, it only applies to zoning board decisions that were pending or were made after the passage of the statute. Nothing in the statute indicates that it was intended to revive exceptions that had expired long before the statute was enacted. The terms of the 1986 rezoning stipulated that the special exception would expire on July 31, 1987, which was well before the 1988 enactment of § 45–24–19(2)(b). Therefore, that statute has no application to the present case.

■ Last, plaintiffs argue that Black Point was zoned for the condominium development in July of 1989 because the CRMC determined that the zoning permitted this type of development. Our first response is to point out that the CRMC does not have the power under law to designate zoning classifications. Furthermore, it appears that the CRMC made that determination solely on the basis of information that plaintiffs had provided.

Under G.L.1956 (1991 Reenactment) § 46–23–6(B)(3) and section 4–2.4 of CRMC's Management Procedures, the CRMC will not institute proceedings unless applicants "certify that they have in their possession current approvals from municipal bodies which are otherwise required for the proposed action." Although it is debatable whether plaintiffs had approval, as such, since they were seeking leave to proceed without the right of way that was one of the conditions set by the Narragansett authorities, we can concede that the project had the approval with the right of way. However, after the special exception expired and after the land in question had been rezoned, plaintiffs no longer had approval. They never informed the CRMC of their change. That agency's reference to the zoning merely reflected the zoning as it existed more than two years earlier. It was in no way binding on the town.

Therefore, we are of the opinion that it was error to evaluate the condemned property as land on which an eighty-unit condominium development could be built. The other issues raised by the state in this appeal need not be addressed because our resolution of the zoning issue is dispositive of this appeal.

For all these reasons, the appeal of the State of Rhode Island is sustained, the judgment appealed from is vacated, and the papers of this case are remanded to the Superior Court for a new trial.