NEWCASTLE REALTY TRUST et al.,

v.

PAWTUCKET REDEVELOPMENT AGENCY et al.

No. 90–540–Appeal.

Supreme Court of Rhode Island.

Nov. 17, 1993.

Joseph Keough, Pawtucket, for plaintiff.

John F. Sherlock, Jr., John T. Gannon, Christopher Fay, Frank Milos, Jr., City of Pawtucket, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the plaintiffs, Newcastle Realty Trust and Charles Goutzos, trustee (Newcastle), from a judgment entered in the Superior Court denying the plaintiffs' prayer for injunctive relief. The plaintiffs had sought to enjoin the Pawtucket Redevelopment Agency (agency) from terminating a contract whereunder the plaintiffs undertook to redevelop a certain tract of real estate that had been acquired by the agency. We affirm the judgment of the Superior Court. The facts of the case insofar as pertinent to this appeal are as follows.

The subject property had been acquired by the agency from the State of Rhode Island during the 1970s. At that time it was known to the agency that an oil spill had earlier occurred on the premises from underground-tank leakage. On January 2, 1986, Newcastle and the agency entered into a contract pursuant to which Newcastle agreed to develop the subject property, which fronted on the Pawtucket River, in two phases. The first phase consisted of the construction of residential or condominium structures. The second phase would consist of the construction of a restaurant and marina.

Section 10 of the agreement of the parties was entitled "Acceptance of Site Conditions" and read as follows: "[Newcastle] accepts the conditions, as the same exist, in or on the described premises or as the same may be altered by mutual agreement of the parties prior to the delivery of the deed, the Redeveloper being cognizant of the specific condition as to oil seepage presently existing and which is the subject of corrective effort on the part of the Agency."

Subsequently a consent agreement was entered into between the agency and the Department of Environmental Management (DEM). This consent agreement required the agency to assume responsibility "for the recovery of oil, the treatment and disposal of ground water, the excavation, treatment and disposal of soils, a sampling and analysis program, and a time table for initiating remedial actions" within thirty days of issuance of a Coastal Resources Management Council (CRMC) assent to a plan for the development of the site. This agreement also provided that the agency had the right to alienate the site to a redeveloper in its normal developmental processes and to delegate such responsibility to the redeveloper "all as currently provided in the [agency] Land Disposition Agreement with its redeveloper." This agreement was executed by the agency and DEM on September 8, 1986.

The agreement between the agency and Newcastle further provided that upon receipt of an assent from CRMC for the construction of phase 1 of the redevelopment plan, Newcastle should file construction plans with the agency within thirty days. Section 8(F) of the agreement provided that Newcastle should make application for approval by any municipal, state, or federal authority re-

quired for the improvements or uses contemplated by this agreement. On December 24, 1987, CRMC granted its assent for phase 1 of the construction.

It was the contention of the agency that thirty days following this assent, Newcastle should have provided construction plans for phase 1 of the redevelopment of the site and should have pursued further the application for CRMC and DEM approval of phase 2 of the construction. The agency further contended that Newcastle had the responsibility to prepare and file with DEM the technical documents required to be filed with DEM pursuant to the consent agreement.

It is undisputed that the redeveloper did not file construction plans for phase 1, nor did it file an application with CRMC or DEM for assent to the implementation of phase 2 of the project. The parties reached an impasse that was resolved on May 5, 1988, when the agency sent to Newcastle a notice of intention to rescind the agreement by reason of Newcastle's failure to proceed with construction plans and to forward an application to CRMC.

Thereafter, Newcastle filed an action in the Superior Court, seeking injunctive relief from the purported termination of the contract by the agency. The city of Pawtucket was allowed to intervene as a party defendant. After a hearing on the merits, a justice of the Superior Court denied the injunctive relief. This appeal ensued.

The principal issue raised by plaintiffs is that the agency had failed to submit to DEM a technical document setting forth remedial action to be performed at the site in accordance with the consent agreement entered into between the agency and DEM on September 8, 1986. The core of the dispute between the parties was whether the agency or Newcastle had the responsibility of performing the necessary remedial work in order to make the site suitable for the second phase of the project.

It appears from the evidence that the agency had installed a pump on the property, which had at least diminished the oil content on the premises, but was unwilling to take the full responsibility for such remedial ac-

tion as might be required for the second phase of the project, the construction of a restaurant and marina. The written agreement on this point is less than crystal clear. Section 10 of the agreement, as noted above, states: "By execution and recordation of this Agreement *the Redeveloper accepts the conditions, as the same exist, in or on the described premises* or as the same may be altered by mutual agreement of the parties prior to the delivery of the deed, *the Redeveloper being cognizant of the specific condition as to oil seepage presently existing and which is the subject of corrective effort on the part of the Agency.*" (Emphasis added.)

Although the trial justice was aware of this issue, he did not purport to resolve it but denied injunctive relief on the ground that Newcastle did not sustain the burden of establishing evidence of irreparable harm.

Our review of the agreement as a whole indicates that the responsibility for remediation of the site conditions was placed principally upon Newcastle as redeveloper. Such remediation would, to a great extent, have been affected by or even dependent upon the nature of the construction plans that Newcastle would have prepared for the second phase. From the testimony presented, it further appears that no subsequent remediation would have been necessary for the first or condominium phase of the redevelopment project.

It should be kept in mind that the purchase price of this tract of more than seven acres of waterfront property was $133,000. It was therefore reasonably obvious that the resources available to the agency to make this land suitable for development were limited and that the principal reliance would, of necessity, be upon Newcastle as redeveloper.

At best, it must be determined that the parties had not reached a meeting of the minds on the allocation of responsibility for the cleanup. No assurance of complete responsibility for the removal of the effects of the oil spill had been assumed by the agency, vis-a-vis Newcastle. The agency had agreed with DEM to remedy the condition but had also reserved the right to alienate the site to a redeveloper in the ordinary course of its land-development procedures.

It is also quite clear in section 8(F) of the agreement that it was the responsibility of the redeveloper (Newcastle) to make application for all municipal, state, or federal approvals for the improvements or uses contemplated by the agreement. No such approval was sought for phase 2.

Consequently, in accordance with section 8(F) of the land-disposition agreement, the agency was justified in sending notice of termination to Newcastle. The failure to submit construction plans within thirty days of CRMC approval for phase 1 and the failure to seek DEM approval for phase 2 of the project by filing the necessary technical documents constituted a breach of Newcastle's obligations under the contract. The agency was therefore justified in sending notice of termination.

■ The plaintiffs raise other issues relating to alleged bias on the part of the trial justice in favor of the city of Pawtucket. However, plaintiffs are unable to point out any evidence or indication of bias or prejudice on this record either in their briefs or at oral argument. Consequently such claims must be disregarded as without merit.

■ In our opinion the trial justice did not err in denying injunctive relief. Although his order sets forth an analysis relating to a preliminary injunction, the trial justice had heard this case on the merits and was denying injunctive relief in the form of a final judgment. In denying injunctive relief on this record, the trial justice did not overlook or misconceive any relevant or material evidence, nor was he otherwise clearly wrong.

*New England Telephone and Telegraph Co. v. Clark,* 624 A.2d 298, 300 (R.I.1993); *Ocean Road Partners v. State,* 612 A.2d 1107, 1111 (R.I.1992); *Pereira v. Tellier,* 583 A.2d 523, 524 (R.I.1990). We believe that his interpretation of the somewhat ambiguous obligations under the contract was essentially correct. Insofar as the granting or denying of injunctive relief involves an exercise of discretion on the part of the trial justice, *see Eastern Motor Inns, Inc. v. Ricci,* 565 A.2d 1265, 1269 (R.I.1989); *Gaglione v. Cardi,* 120 R.I. 534, 540, 388 A.2d 361, 364 (1978), we find no abuse of discretion in this case. The plaintiffs sought relief analogous to specific performance but were unwilling to proceed to carry out their obligations under the contract. They were not ready, able, and willing to perform their part of the bargain as purchasers and redevelopers. They were therefore not entitled to an injunction against the agency. *See Jakober v. E.M. Loew's Capitol Theatre, Inc.,* 107 R.I. 104, 114, 265 A.2d 429, 435 (1970).

For the reasons stated, the plaintiffs' appeal is hereby denied and dismissed. The judgment of the Superior Court is hereby affirmed.

FAY, C.J., did not participate.