DECISION
This is a consolidated appeal of two decisions of the Zoning Board of Review of the Town of New Shoreham (Board). E. Sands Payne, Inc. (plaintiff) seeks reversal of the Board's denial of the plaintiff's appeal of a zoning notice of violation. The plaintiff also seeks reversal of the conditions imposed by the Board in granting the plaintiff a special use permit. In addition, the plaintiff seeks a declaratory judgment that the Board's conditions in the special use permit concerned matters outside the jurisdictional authority of the Board. Jurisdiction in this Court is pursuant to GL. 1956 § 45-24-69.
Facts/Travel
The plaintiff owns real property located on Block Island, designated as lot 104 on Assessor's Map 5. The plaintiffs property is a peninsula which extends into Trim's Pond, a part of Great Salt Pond. The property is located within the New Harbor Commercial zoning district and the Waterfront Overlay zoning district. The Waterfront Overlay district encompasses "all of the land area between the mean high water of all tidal waters and a line fifty (50) feet landward thereof." New Shoreham Zoning Ordinance, section 318(B).
In May 1995, Marc TiIlson (Tillson), New Shoreharm's Building Official and Zoning Enforcement Official, observed the operation of the plaintiffs kayak rental business on lot 104. The plaintiff positioned a traiIer on the southwest portion of lot 104, where several kayaks were stored on racks. Other kayaks were set out on the ground next to the trailer. Tillson noticed persons renting the kayaks and noticed several persons launching the kayaks into Trim's Pond from lot 104. A 4x4 fabric banner which read "New Harbor Kayak Rental" hung from the trailer to advertise the business. Tillson found that the plaintiffs kayak rental business violated several zoning provisions. On May 6, 1995, Tillson issued a Notice of Violation/Cease and Desist to the plaintiff. The notice of violation stated:
 "you are in violation of the Town of New Shoreham Zoning Ordinance, Section 111(3), which prohibits the use of trailers for any accessory use; Section 111(22) which prohibits all temporary and/or mobile facilities for commrrcial use or storage; Section 318, Waterfront Overlay, (D)(2), Uses Allowed by Special Use permit, Type 2 Districts, which does not allow for commercial activity in Type 2 Districts other than commercial shellfishing; Section 415, waterfront Uses, which does not identify or permit commercial activity in coastal pond waters; Section 504, Signs, (B)(1), (B)(3), (B)(4), (B)(8) . . . ." (Notice of Violation/Cease and Desist, dated May 6, 1995).
On June 26, 1995, the plaintiff filed an appeal of the Notice of Violation/Cease and Desist with the Board. On November 8, 1995, the plaintiff also filed an application for a special use permit to conduct a kayak rental business.
On March 25, 1996, the Board heard both the Notice of Violation appeal and the application for a special use permit in separate proceedings. The plaintiff explained that it was proceeding with the special use permit application because the Board was not prepared to decide the Notice of Violation appeal on the day of the hearing. The plaintiff specified that it was going forward with the special use permit application without prejudice to its position that the kayak rental business constituted a permitted use.
At the hearing for the Notice of Violation appeal the Board heard testimony and received evidence. Tillson testified as to his observations of the plaintiffs kayak rental business. Under cross-examination, Tillson testified that he believed that the trailer had probably been about 40 or 50 feet away from the high-water mark of the shore. (Tr. Notice of Violation Appeal at 7.) However, Tillson also stated that he did not measure the distance between the high water mark and the trailer or the table and chair in front of the trailer. (Tr. Notice of Violation Appeal at 7, 10.) Tillson further explained that the Notice of Violation involved the signage and the launching of kayaks into Type 2 waters, not just the placement of the trailer. (Tr. Notice of Violation Appeal at 8-9). The plaintiff introduced a copy of a letter from the Coastal Resources Management Council (CRMC) which expressed an intention by the CRMC to grant an assent for the kayak rental business once local approval was received. (Tr. Notice of Violation Appeal at 19).
Clifford Payne (Payne), trustee for the owner of E. Sands Payne Inc., testified that his discussions with Tillson led him to believe that a kayak rental business was permitted. Payne also testified that the trailer and rental activity took place more than 50 feet from the high water mean. (Tr. Notice of Violation Appeal at 52-53). However, Payne stated that some kayaks were positioned on the grass within fifty feet of the water. (Tr. Notice of Violation Appeal at 52). Payne also testified that he did not instruct customers that they were required to launch their kayaks from lot 104. (Tr. Notice of Violation Appeal at 54; Tr. Special Use Permit at 12). Finally, Henry Dupont, chairman of the committee for the Great Salt Pond, testified that rocks near the shore had been moved and rubber mats were in their place to facilitate the launching of kayaks. (Tr. Notice of Violation Appeal at 57-59).
Later in the evening, the Board heard testimony for the plaintiff's special use permit. Payne reiterated much of the testimony he had presented at the notice of violation hearing. Payne clarified that he put rubber mats near the shore to protect the environment from people who might launch kayaks from that point, although he did not care where customers launched their kayaks. (Tr. Special Use Permit at 12-14). The plaintiff submitted photos of the trailer and nearby shore. Dupont also offered additional testimony, stating that the Committee for the Great Salt Pond was not opposed to granting the special use permit but wanted the launching of kayaks restricted to Type 3 waters. (Tr. Special Use Permit at 44). An abutting landowner, Charlotte Herring, testified that she opposed the launching of kayaks into Type 2 waters and would not object to the launching of kayaks in Type 3 waters. (Tr. Special Use Permit at 48).
On April 29, 1996, the Board issued separate decisions denying the plaintiffs appeal of the Notice of Violation and granting the plaintiff's application for a special use permit with specific attached conditions. In its decision denying the plaintiff's appeal of the Notice of Violation, the Board found that the trailer was prohibited as an accessory use and the trailer could not be used as a semi-permanent base of operations for a business. The Board further found that photos submitted by the plaintiff indicated that the plaintiff was conducting business illegally within the Waterfront Overlay district. The Board also found that the building official was correct in citing violations of section 415 for waterfront uses and section 504 on signage. The Board stated that the placement of rubber mats did not seem to comply with section 415 on waterfront uses.
In the Board's decision to grant the special use permit, the Board attached several conditions. The Board required that the trailer be used only to transport the kayaks to and from the site and required the plaintiff to park the trailer in the vehicular parking area. The Board also required the plaintiff to receive sign approval and to issue a map to customers showing the location of prohibited areas for launching kayaks. Finally, the Board prohibited the launching of kayaks into Type 1 or Type 2 waters and permitted the launching of kayaks only into Type 3 waters.
On May 15, 1996, the plaintiff filed a timely consolidated appeal of the Board's decisions. On October 26, 1996, the CRMC granted the plaintiff an Assent to operate the kayak rental business. Subsequently, Judge Williams granted the CRMC's motion to intervene as a party plaintiff. On July 7, 1997, the plaintiff filed a second amended complaint adding a count for attorney's fees pursuant to § 42-92-3(b). The Board objected to the plaintiff's motion to amend the complaint. On July 23, 1997, Judge Savage granted the plaintiff's motion for a partial stay of the Board's decisions to the extent that those decisions impaired the plaintiffs ability to offer customers access to Great Salt Pond. This stay expired on October 15, 1997.
On appeal, the plaintiff argues that the Board committed an error of law in its decisions because the operation of a kayak rental business is a permitted use. The plaintiff also argues that it did not operate the kayak rental business within the Waterfront Overlay district and the CRMC Assent gave the plaintiff the authority to operate the kayak rental business.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 "(1) In violation of constitutional, statutory or ordinance provisions;
 "(2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d 824-25). The reviewing court "examines the record below to deterrnine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521 (1977).
Notice of Violation
The plaintiff argues that there was insufficient evidence of record to prove that the plaintiff operated a kayak rental business within the Waterfront Overlay district under section 318 of the New Shoreham Zoning Ordinance. The plaintiff notes that Tillson did not measure the distance between the trailer and the high water mean, nor was there any evidence introduced as to the location of the high water mean. The plaintiff states that there is nothing in the record to indicate where the 50 foot Waterfront Overlay district began. The plaintiff also argues that the town's jurisdiction over the 50 foot area in the Waterfront Overlay is superseded by the CRMC's jurisdiction.
The plaintiff also contends that it did not violate zoning ordinance sections on the use of trailers and waterfront uses. The plaintiff argues that trailers may not be regulated through zoning if the trailer is not affixed to the ground or if the trailer is used in a transitory manner. The plaintiff also states that there was no evidence to indicate that the plaintiff operated its business from the trailer. The plaintiff further argues that the Town of New Shoreham has yielded to CRMC's jurisdiction on waterfront uses, as section 415 of the New Shoreham Zoning Ordinance specifically says that its waterfront use standards parallel those of the CRMC. Finally, the plaintiff does not contest the need to apply for a permit for its sign.
The Board responds that it had substantial evidence of record to indicate that the plaintiff operated its kayak rental business within the Waterfront Overlay district. The Board points to photograph exhibits and the testimony of Payne as evidence that the kayak business was conducted inside the Waterfront Overlay district. The Board also states that it can regulate trailers, as the Board can regulate land uses which do not involve structures. Finally, the Board argues that it may regulate zoning uses in coastal areas as long as its zoning ordinances are consistent with the CRMC's regulations. The Board states that the zoning ordinances in question did not conflict with the CRMC's Assent or CRMC's regulations.
"The Waterfront Overlay [district] comprises the land contiguous to the island's saltwater harbors and ponds . . . [and applies] to all of the land area between the mean high water of all tidal waters and a line fifty (50) feet landward thereof." New Shoreham Zoning Ordinance, Section 318(A), (B). The Waterfront Overlay is organized into different shoreline districts. The Type 2 district is contiguous to the plaintiffs kayak rental business. In Type 2, "[a]ll recreational uses not involving the construction [or] placement of structures . . . [and] [c]ommercial and recreational shellfishing not involving the construction or placement of structures" are permitted uses. New Shoreham Zoning Ordinance, section 318(C)(2). The Waterfront Overlay district does not allow commercial activity, other than commercial shell-fishing, not even by special use permit. New Shoreham Zoning Ordinance, section 318(D) (2). In affirming a building official's notice of violation, a zoning board must have substantial evidence before it to support the violation. SeeCaswell. 424 A.2d at 647.
In the instant case, the Board had substantial evidence to find the plaintiff in violation of section 318. Payne testified, on behalf of the plaintiff, that kayaks were set out within 50 feet of the shore. Tillson testified that he estimated that the trailer was located approximately 40 to 50 feet from the high water mark. Payne indicated in his testimony that the kayaks on display were considerably closer to the water than the trailer. (Tr. Notice of Violation Appeal at 53). Even though Tillson did not measure the distance between the high water mean and the trailer, and the photograph exhibits were inconclusive as to measured distances, the Board still had substantial evidence to indicate that at least part of the kayak rental business (the display of the kayaks) took place within the Waterfront Overlay district. Because such commercial activity is not permitted, the Board's finding that the plaintiff violated section 318 is suppported by reliable and probative evidence and is not clearly erroneous.
The New Shoreham Zoning Ordinance regulates trailers through sections 111 (3) and 111 (22). "[T]railers or mobile homes for human habitation or any accessory use, except use incidental to construction" are prohibited. New Shoreham Zoning Ordinance, section 111(3). Also "all temporary and/or mobile facilities for residential, commercial or industrial use or storage (unless authorized under section 112)" are prohibited. New Shoreham Zoning Ordinance, section 111(22). Zoning ordinances may regulate type and density of land use, environmental concerns, and economic considerations which do not involve structures. NewEngland Naturist Association, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (town could require special use exception for association's recreational nude sun bathing).
The evidence of record indicates that the plaintiff used its trailer for a commercial purpose. The plaintiff hung a banner advertising its kayak rental business from the trailer. The trailer contained several kayaks on racks which were rented by customers. Under the Zoning Enabling Act, the Town of New Shoreham had the power to impose zoning regulations upon trailers. See Id. The plaintiff violated sections 111(3) and 111 (22) as the trailer served an integral part of the plaintiffs kayak rental business.
Under section 415 entitled "Waterfront Uses," recreational paths must not disrupt wildlife habitats. New Shoreham Zoning Ordinance, Section 415(B)(1). Section 415 also prescribes that accessways shall limit erosion and shoreline alterations "shall be carried out only for increased protection from storm winds or enhancement of beaches and other natural conditions." New Shoreham Zoning Ordinance, section 415(B)(2), (3). The purpose behind section 415 is to set forth standards for waterfront uses which parallel the CRMC's program. New Shoreham Zoning Ordinance, section 415(A).
This court finds that the Board did not have substantial evidence to support a violation under section 415. In its decision the Board found that the plaintiff did not maintain safeguards against the disruption of wildlife and allowed extension defoliation to occur. (Decision Letter of New Shoreham Zoning Board dated April 29, 1996). The Board also found that the rubber mats set out near the shore did not seem to conform to section 415(B)(5)'s requirements on structures. (Decision Letter of New Shoreham Zoning Board dated April 29, 1996). The evidence of record does not support any of the Board's above contentions in regards to section 415. At the Notice of Violation hearing, Dupont, chairman of the Committee for the Great Salt Pond, testified that rubber mats were positioned near the shore and some of the shoreline rocks were moved. Dupont did not offer any evidence that the plaintiff had damaged wildlife habitats. Neither was there any evidence offered which demonstrated that the rubbers mats exacerbated erosion along the shore. Dupont did testify at the Special Use Permit hearing that continued use of a path leading to the shore "may possibly lead to erosion and possibly degrade that area . . . ." (Tr. Special Use Permit at 43). However, this testimony was presented to the Board for the Special Use Permit hearing, not the Notice of Violation matter, and still did not prove that the plaintiff failed to control erosion.
In addition, the plaintiff introduced a letter from the CRMC stating that the CRMC was prepared to issue an Assent for the kayak rental business once the plaintiff obtained local approval. (Tr. Notice of Violation Appeal at 19). Tillson also confirmed that personnel from the CRMC had inspected the area. (Tr. Notice of Violation Appeal at 13). In light of section 415's purpose to parallel CRMC standards, this CRMC letter provided evidence that the plaintiff was not disrupting wildlife habitats or failing to control erosion. Finally, the rubber mats do not qualify as structures and hence, cannot violate section 415(B)(5) which refers to structures. See § 45-24-31 (58). For all of the above reasons, this Court finds that the plaintiffs kayak rental business did not violate section 415 of the New Shoreham Zoning Ordinance.
The plaintiff has conceded that it must obtain a permit for its sign. The Board correctly found the plaintiff in violation of section 504 of the New Shoreham Zoning Ordinance, as the plaintiff had not obtained a permit for its banner sign.
Special Use Permit
While still maintaining that its kayak rental business is permitted under the zoning ordinance, the plaintiff argues that the Board imposed illegal conditions in granting the Special Use Permit. The plaintiff argues that the Board has no jurisdiction to prevent the launching of kayaks into Type II waters. The plaintiff argues that only the CRMC has jurisdiction over this activity. The plaintiff states that the conditions imposed in the Special Use Permit limiting launching of kayaks to Type III waters and requiring the plaintiff to hand out maps designating wildlife habitats and launching waters are inconsistent with the CRMC's Assent which approved the operation of the kayak rental business. The plaintiff also argues that the Board may not impose conditions on mobile trailers. Above all, the plaintiff argues that it does not need a special use permit, as its kayak rental business is permitted in the New Harbor Commercial Zone.
The Board argues in response that the conditions imposed by the special use permit are not inconsistent with the CRMC Assent. The Board argues that the Town of New Shoreham has concurrent jurisdiction over shoreline activities and the Town may impose zoning regulations for the shoreline as long as they are consistent with CRMC's regulation of the shoreline. Under the New Harbor Commercial Zone, retail trade constitutes a permitted use. New Shoreham Zoning Ordinance, section 312 (D). Appropriate Conditions for a special use permit "must be reasonable and not arbitrary, unnecessary or oppressive." Olevson v. Zoning Board ofReview, 71 R.I. 303, 44 A.2d 720, 722 (1945).
In the instant case, two conditions imposed by the Board in granting the Special Use Permit are both unreasonable and unnecessary. In its decision the Board specified that
 "4. Launching of kayaks will be permitted only in Type III waters. The Zoning Board clearly has no jurisdiction to approve any launching site in Type II or Type I waters . . .
 6. In accordance with the recommendations of the Conservation Commission, all persons renting kayaks will be provided with a map showing Type I and Type II waters as areas where launching and landing are prohibited, and with appropriate instructions relating to the respectful treatment of wildlife habitat and private property. Such informational handout is to be reviewed and approved by the Conservation Commission." (Decision on Special Use Permit Application, dated April 29, 1996).
The requirement that kayaks may be launched only in Type III waters is unnecessary and unreasonable because recreational boating is permitted for Type II waters. New Shoreham Zoning Ordinance, section 318(c)(2)(a). Type II waters are contiguous to the plaintiffs lot 104. Nothing in the record establishes that the rental business required renters to launch their kayaks from lot 104 into Trim's Pond. In fact, Payne testified that "people have rented a cottage and they've taken [the kayak] in front of their cottage and just pulled it up on the lawn there for a week if they were staying for a week. I don't know where they take them, you know, as long as they don't go in the ocean." (Tr. Notice of Violation Appeal at 54). Later, in response to a question on whether Payne encouraged customers to launch their kayaks from lot 104, he stated, "I don't really care where they launch the boats, but if they're going to launch it there [lot 104] that would obviously be the place they would go." (Tr. Special Use Permit at 13). The above demonstrates that the launching of kayaks from lot 104 was not a required part of the plaintiffs business. Once the rental transaction is complete, individuals are free to launch their kayaks wherever recreational boating is permitted. As the activity is already permitted, the Board's condition is both unreasonable and unnecessary. Similarly, the Board's condition that the plaintiff provide maps specifying the location of Type I and Type II waters is unreasonable and oppressive because after the rental transaction has been completed, it is the individual renter's responsibility to launch his kayak in a permitted area and to take care not to disrupt wildlife habitats. In any event, Type II waters permit recreational boating such as kayaking. The prohibition on launching kayaks into Type II waters also conflicts with the policy behind CRMC regulations for Type II waters which allow "low intensity recreational and residential uses." CRMC Program, section 200.2(A). Kayaking clearly conforms to such a policy. Also, the rental of the kayaks within the New Harbor Commercial Zone is permitted retail trade.
The other conditions attached to the Special Use Permit are reasonable and may stand. As mentioned previously, the Town of New Shoreham may regulate trailers by zoning regulations even if they are not affixed to the land. See New England Naturist Ass'n,Inc., 648 A.2d at 371. It was not unreasonable for the Board to require the trailer to remain parked in the vehicular parking area. Of course if the plaintiff does not use a trailer in the kayak rental business, the Special Use Permit is not needed as the kayak rental activity is permitted. The conditions requiring Planning Board approval, conformance with zoning provisions on facilities and the sign ordinance, and receipt of all other necessary approvals were reasonable conditions in granting the Special Use Permit.
Preemption
The CRMC intervened in the present matter and argues that the CRMC has exclusive jurisdiction over tidal waters and the shoreline up to two hundred feet from the coastal physiographic feature. The CRMC argues that the Town had no authority to issue the Notice of Violation or impose conditions on the Special Use Permit because the CRMC has preempted regulation of tidal waters. The CRMC argues that through the doctrine of implied preemption it has preempted the field of coastal regulation such that the Board's Notice of Violation and special use permit conditions are invalid.
The Board contends that concurrent jurisdiction exists for shoreline activities. The Board argues that its decisions and the Town's zoning ordinances are not invalid because they are consistent with CRMC's regulatory scheme.
The CRMC was created to serve "as the principal mechanism for management of the state's coastal resources." § 46-23-1(c). "Generally, state laws of statewide application preempt municipal ordinances on the same subject if the legislature intended that they thoroughly occupy the field." Town of East Greenwhich v.O'Neil, 617 A.2d 104, 109 (R.I. 1992). However, the CRMC allows for concurrent jurisdiction when it provides that local approvals are necessary before CRMC's approval is effective. See Ocean RoadPartners v. State, 612 A.2d 1107, 1112-1113 (R.I. 1992) (beachfront land could not be built solely on the basis of CRMC approval, as the local zoning special exception had expired and such zoning approval was required).
In the instant case, the CRMC enabling statute clearly evinces an intent for the CRMC to have "principal" management of coastal resources but not "exclusive" jurisdiction. Section46-23-1(c). Such language differentiates the role of the CRMC from the role of the Public Utilities Commission (PUC). In finding that the PUC had preempted the field of utility regulation, the Supreme Court pointed to the fact that the PUC's enabling legislation granted the PUC "the exclusive power and authority to supervise, regulate and make orders governing the conduct of public utilities." Town of East Greenwhich, 647 A.2d at 110. The CRMC enabling statute, however, allows for some overlapping regulation by the Department of Environmental Management and local zoning authorities as it does not have similar "exclusivity" language. It is not intended for the CRMC to exclusively regulate all aspects of shoreline activities. The CRMC has itself recognized such concurrent jurisdiction in the instant case by providing in its Assent that "[a]ll town of New Shoreham approvals shall be required to be obtained prior to conducting said business. Approval herein granted shall be conditional upon receiving/maintaining local approvals, as determined by the Town of New Shoreham." (CRMC Assent A96-623 for Kayak Rental Business, dated October 26, 1996).
Towns can regulate environmental concerns through zoning ordinances. New England Naturist Ass'n, Inc., 648 A.2d at 371. However, these zoning ordinances cannot be inconsistent with the CRMC regulatory scheme. See Easton's Point v. Coastal ReosurcesMgt., 559 A.2d 633, 636 (R.I. 1989). Those zoning regulations which are consistent with the CRMC Program serve valid police power concerns of the municipality, as envisioned by New EnglandNaturist Ass'n, Inc., supra, and Ocean Road Partners, supra.
Therefore, the Town of New Shoreham was well within its authority in finding the plaintiff in violation of New Shoreham Zoning ordinance sections 111(3) and 111(22) (on use of trailers), section 318(D)(2) (governing the Waterfront Overlay district) and section 504(B)(1)(3)(4) (sign ordinance). There was not sufficient evidence of record to find the plaintiff in violation of section 415 (Waterfront Uses). The conditions of the Special Use Permit regulating the plaintiffs use of its trailer also constituted a valid exercise of municipal police power. However, as discussed previously, the conditions of the Special Use Permit which purported to limit the plaintiff's rental customers from using their kayaks in Type II waters contravened both the New Shoreham Zoning ordinance and the CRMC regulatory scheme and therefore were in violation of ordinance and statutory provisions.
Declaratory Judgment Count
The plaintiff also seeks a declaratory judgment declaring that the New Shoreham Zoning Board has no jurisdictional authority to regulate the launching of vessels in the Salt Pond, or require a special use permit for launching kayaks. The plaintiff states that the CRMC has express power over the above areas. "The court may refuse to render or enter a declaratory judgment or decree where the judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Section 9-30-6. "[W]here there is another action pending, it is within the sound judicial discretion of the court to grant or withhold declaratory relief."Theroux v. Bay Associates, Inc., 114 R.I. 746, 339 A.2d 266, 267-268 (1975). For a declaratory judgment action, "the court will avoid a needless judicial determination, where an application to the zoning board seeking a variance or special exception could meet with success." Annicelli v. Town of SouthKingstown, 463 A.2d 133, 138 (R.I. 1983). In its review of the 16 instant Zoning Board decision, this court has found that the Board may not prohibit individuals from launching kayaks into Type II waters. Accordingly, in its discretion, this court declines to issue a declaratory judgment, having rendered a decision in the zoning action.
Conclusion
After review of the entire record, this Court finds that the Zoning Board's decision upholding the Notice of Violation for zoning ordinance sections 111(3), 111(22), 318(D)(2) and 504(B)(1)(3)(4) was not in violation of constitutional or statutory provisions, was not in excess of the Board's statutory authority, was made upon lawful procedure and was not clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. The Board's actions in upholding the Notice of Violation for sections 111(3), 111(22), 318(D)(2) and 504(B)(1)(3)(4) were not arbitrary and capricious or characterized by an abuse of discretion or other error of law. The Board's decision to uphold the Notice of Violation for sections 111(3), 111(22), 318(D)(2), and 504(B)(1)(3)(4) is hereby affirmed. The Board's decision to uphold the Notice of Violation for section 415 is hereby reversed, as this decision was clearly erroneous in view of the reliable, probative and substantial evidence of the whole record.
The Zoning Board's decision to grant the Special Use Permit and attach conditions regulating the use of a trailer and requiring the plaintiff to secure planning and other necessary approvals and comply with zoning provisions on facilities and signs was not in violation of constitutional or statutory provisions, was not in excess of the Board's statutory authority, was made upon lawful procedure and was not clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. The Board's actions in attaching conditions on the use of trailers, compliance with zoning and sign provisions, securing planning approval and other necessary approvals were not arbitrary and capricious or characterized by an abuse of discretion or other error of law. The Board's decision to attach conditions on the use of trailers, requiring planning and other necessary approvals, and requiring compliance with all zoning provisions, including those for signage is hereby affirmed. The Board's decision to attach conditions to the Special Use Permit prohibiting the launching of kayaks into Type II waters and requiring the plaintiff to issue instructions to renters on the location of water districts and treatment of wildlife habitats is hereby reversed, as this decision was in violation of statutory provisions for the State of Rhode Island and Town of New Shoreham. The plaintiff s request for attorney's fees pursuant to § 42-92-3(b) is denied, as these fees are not provided for in the Zoning Enabling Act. § 45-24-1 et. seq.
Accordingly, the Board's decision is reversed in part, and affirmed in part.
Counsel shall prepare the appropriate order for entry.